532 So.2d 1311 (1988)
Curtis EDWARDS, Appellant,
v.
STATE of Florida, Appellee.
No. BS-485.
District Court of Appeal of Florida, First District.
October 27, 1988.
*1312 Michael E. Allen, Public Defender, and Phil Patterson, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and John M. Koenig, Jr., Tallahassee, for appellee.
BARFIELD, Judge.
Curtis Edwards appeals his conviction for possession of cocaine, asserting that the trial court abused its discretion in denying his motion to suppress the cocaine "rock" found in his pocket because he did not consent to the search and the police did not have probable cause to arrest him. We agree and reverse.
The officer who found the cocaine in appellant's pocket was training another officer when they approached a housing project where drug dealers often gathered under the oak trees, a signal to passersby they were "open for business." As they neared five people congregated under a tree, one of whom the officer knew to be a drug user and another he strongly suspected of being a drug dealer, he saw appellant lean down and speak to a man seated under the tree who made a quick movement as if to hide something under his leg. The officers stopped their patrol car, asked for identification, and approached the seated man who was appellant's brother.
Appellant was leaning against the tree. As he stood erect, a plastic bag containing crack cocaine fell from the tree and landed on the ground about five feet from him. The officers searched the people closest to the bag (appellant, his brother, and a man named Johnson) and found $300-400 rolled in a knot in appellant's pocket. The officer testified that this is how drug dealers often carry money, but admitted on cross-examination that other people also carry money this way. He stated that appellant was closest to the cocaine and that he had "good reason to believe that one, if not all, of the subjects who we had stopped and searched were involved in that cocaine."
Appellant gave the officers identification which was checked by computer, revealing no outstanding warrants for his arrest. Nevertheless, the officers told the three men they wanted to take them to the police station to get photographs and "find out who they are." Johnson protested, whereupon the officer advised him that "he's not under arrest but he could be placed under arrest." Johnson capitulated and, according to the officer, the other two men "never even really opened their mouth after it was brought up that I wanted to take them to the station."
The officer admitted on cross-examination that he had lied to them and that he actually intended to interrogate them once they reached the station. He testified that although he thought he had probable cause to arrest all three, he did not place them under arrest and told them they were not under arrest. He did not specifically recall whether he read them their Miranda rights, but testified that he usually advises defendants of their rights on the way to the station.
When they arrived at the station, he placed the three men in separate interrogation rooms and spoke to appellant's brother first, with no success. He stated that he then asked appellant, "You don't mind if we go ahead and do a thorough search of you," whereupon appellant "just stood up" and had no objections. The officer pulled appellant's pockets inside out and a small pebble of crack cocaine fell out. Appellant was charged with possession of the pebble. He was not charged with possession of the *1313 bag of cocaine.[1]
Appellant testified that he had been questioned for 15 or 20 minutes at the station, the officers trying to get him to say that the cocaine belonged to his brother. When the officer who had earlier searched him came back, he "come in there and told me to pull off all my clothes and he went and pulled my pockets inside-out." Appellant stated that he was never asked for consent, nor told he had a right not to be searched.
The State argued to the trial judge that it was irrelevant whether appellant was arrested at the scene or later at the station because the officer had probable cause to arrest based upon his observations and appellant's close proximity to the bag of cocaine, that whether Miranda warnings were given was immaterial, that nonverbal consent is enough, and that the court must view the evidence in the light most favorable to the State on a motion to suppress. Appellant's attorney argued that the officers were not justified in stopping or searching appellant, that therefore the State must bear the burden of proving a valid consent to search by clear and convincing evidence, that mere acquiescence to authority is not voluntary consent, and that the court could consider the fact that a consent form was not offered and that no one could corroborate the officer's testimony regarding appellant's alleged consent at the station.
The trial judge ruled that the officers had a founded suspicion to stop appellant because when they approached and asked for identification appellant moved and the cocaine fell, that the officers had probable cause to arrest appellant because of his proximity to the cocaine, and that the burden then shifted to appellant "to put on the testimony as to what happened subsequent to the inquiries made at the scene." He found that the officer had the authority to search appellant because he could have arrested him at any time. He noted the conflicting testimony regarding whether appellant consented to the search, but stated: "I have to look at it in the light most favorable to the State at this point. It may not be beyond a reasonable doubt. But, however, I will deny the Motion to Suppress." Appellant pled nolo contendere to the charge, reserving his right to appeal the denial of his motion to suppress.
The trial court erred in finding that the officers had probable cause to arrest appellant merely because he was the closest of five people to a baggie of cocaine which fell out of a tree in their presence. The test to determine probable cause to arrest is whether the facts and circumstances within the officer's knowledge prior to the search are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been committed and that the accused is the one who committed it. Benefield v. State, 160 So.2d 706 (Fla. 1964). To support a finding of probable cause to arrest on a constructive possession theory, the State must establish by a factual showing that the arresting officer reasonably believed the accused had dominion and control over the contraband, knew it was in his presence, and knew of its illicit nature. Wale v. State, 397 So.2d 738 (Fla. 4th DCA 1981).[2]
Assuming that the officers had a founded suspicion of illegal activity justifying the stop of appellant and the others for identification and that the officers were then entitled to frisk them for weapons, the record shows that no weapons or drugs were found on the three men and that appellant presented identification which was checked and revealed no outstanding warrants. At that point, unless the officers had probable cause to arrest appellant for constructive possession of the baggie of cocaine, any further warrantless search or seizure was illegal unless appellant voluntarily *1314 consented to it. The officer's suspicion in this case that "all of the subjects who we had stopped and searched were involved with that cocaine" does not rise to the level of probable cause.
Mere proximity to contraband found in a public place and in the vicinity of several other people does not warrant a finding that the police officer had probable cause to believe that the person or persons closest to the contraband possessed it. Agee v. State, 522 So.2d 1044 (Fla. 2d DCA 1988);[3]Collier v. State, 509 So.2d 971 (Fla. 2d DCA 1987).[4] In Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), the Court found the inference that persons who talk to narcotics addicts are engaged in criminal traffic in narcotics is not the sort of "reasonable inference" required to support an intrusion upon an individual's personal security.
The cases upon which the State relies, McNeil v. State[5] and State v. Byham,[6] are distinguishable on their facts. In the case at issue the officers observed nothing from which they could reasonably infer that appellant had control of the baggie or was even aware of its presence before it fell from the tree, both elements of constructive possession. Compare State v. James[7] and In the Interest of P.L.R.[8] to Williams v. State[9] and Nast v. State.[10]
*1315 Without probable cause to arrest appellant, the search of his pants pocket at the police station was presumptively illegal unless the State could demonstrate by clear and convincing evidence that appellant freely consented to it. The State has at best demonstrated acquiescence to police authority under coercive circumstances. Because of the coercive setting and the officer's failure to notify him of his right to refuse the search request, appellant's compliance was merely acquiescence to authority and not a free and voluntary consent to search. Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968);[11]Robinson v. State, 388 So.2d 286 (Fla. 1st DCA 1980);[12]Ingram v. State, 364 So.2d 821 (Fla. 4th DCA 1978).[13] The search was therefore illegal. Moorehead v. State, 378 So.2d 123 (Fla. 2d DCA 1980);[14]Pirri v. State, 428 So.2d 285 (Fla. 4th DCA), rev. den., State v. Pirri, 438 So.2d 834 (Fla. 1983).[15]
Furthermore, the trial court erred as a matter of law by using an incorrect standard for viewing the evidence at the suppression hearing which greatly reduced the burden of proof the State was required to shoulder. When the State seeks to use evidence seized without a warrant, the trial court must act as a neutral and detached magistrate in determining whether the State has met its burden of proving that *1316 the evidence was obtained pursuant to an exception to the warrant requirement.
Appellant's conviction is REVERSED.
JOANOS and WIGGINTON, JJ., concur.
NOTES
[1] Appellant's fingerprints were not found on the plastic bag. The officer had apparently ruined any prints when he picked up the bag and put it in his back pocket.
[2] See also Williams v. State, 489 So.2d 1198 (Fla. 1st DCA), rev. den., State v. Williams, 500 So.2d 546 (Fla. 1986); Rita v. State, 470 So.2d 80 (Fla. 1st DCA), rev. den., State v. Rita, 480 So.2d 1296 (Fla. 1985); Johnson v. State, 456 So.2d 923 (Fla. 3d DCA 1984).
[3] The court ruled the evidence was insufficient to establish that Agee constructively possessed a matchbox containing heroin found approximately one foot from where he was crouching behind a large oak tree. The court noted the box was found in a public place, there were others present, and there was no evidence Agee had touched the box. The court also discussed two similar cases, Tanksley v. State, 332 So.2d 76 (Fla. 2d DCA 1976), and Diaz v. State, 467 So.2d 1061 (Fla. 3d DCA 1985).
[4] Collier was arrested while sitting on a concrete wall in a drug trafficking area. A package on the ground near him was later found to contain cocaine. The court held there was no evidence that Collier had ever possessed the package or that it was in his constructive possession.
[5] 512 So.2d 1062 (Fla. 4th DCA 1987), rev. den., 519 So.2d 987 (Fla. 1988). McNeil and two other men who were huddled beside a porch in a neighborhood known for drug activities dispersed as police approached, whereupon the police saw a pipe and a cocaine rock in plain view on the porch. The three men were searched and another cocaine rock and pipe were discovered on McNeil. The police stated they believed they had a founded suspicion to stop and "pat down" search the suspects under the stop and frisk statute, section 901.151, Florida Statutes (1985). The appellate court held that the police had probable cause to make an arrest upon the discovery of the pipe and cocaine rock on the porch immediately following the dispersal of the group, noting that the denial of the motion to suppress would have been reversed had only a "founded suspicion" existed.
[6] 394 So.2d 1142 (Fla. 4th DCA 1981). A motorcycle policeman observed three youths huddled on the sidewalk passing around "some type of cigarette" which they attempted to conceal as he passed, and threw down as he turned the motorcycle around. Based on his experience as a narcotics investigator, he concluded they were smoking marijuana and searched Byham, finding marijuana and hashish. The appellate court reversed the suppression of the evidence found in the search, concluding that the search was incident to a lawful arrest for possession of marijuana based on probable cause and the fact it preceded the arrest did not impair that conclusion.
[7] 526 So.2d 188 (Fla. 3d DCA 1988). James, who was holding a paper bag, had waved to an undercover officer, a sign he had narcotics to sell. As the officer approached, someone called out "99", the street word for police, whereupon James inserted the paper bag under the gas flap of his car. The court found that the officer had probable cause to believe James had narcotics in the bag, that the search of the bag (which contained cocaine) was incident to a legal arrest, and that the validity of the search of a defendant conducted after probable cause to arrest him has arisen is unaffected by the fact that the search comes before the arrest.
[8] 435 So.2d 850 (Fla. 4th DCA 1983), approved, P.L.R. v. State, 455 So.2d 363 (Fla. 1984), cert. den., P.L.R. v. Florida, 469 U.S. 1220, 105 S.Ct. 1206, 84 L.Ed.2d 349 (1985). An experienced officer patrolling a "high narcotics trafficking area" was found to have articulated reasonable grounds to believe that the small manila envelope in the defendant juvenile's pocket contained marijuana, so that the subsequent seizure of marijuana found in his sock at booking was incident to a legal arrest and therefore valid.
[9] 338 So.2d 233 (Fla. 4th DCA 1976). The driver of the car in which Williams was riding was arrested on an outstanding drug warrant. A cooker spoon with a white residue was observed in the car, and a packet of heroin was found on another passenger, but nothing was found on Williams. The court found that under the circumstances the police did not have probable cause to arrest Williams, and the heroin seized in a subsequent search of his person at the police station should have been suppressed.
[10] 333 So.2d 103 (Fla. 2d DCA 1976). An officer observed Nast and an acquaintance on a public bench, apparently conversing. As he approached them, the other man walked to the seawall and made a throwing motion. The officer recovered a baggie of marijuana and arrested both men. The court held that the officer could not reasonably have concluded that Nast knew of the marijuana or had the ability to reduce it to his possession or control, so that his arrest was unlawful.
[11] In Bumper, the Court held that where there is coercion there cannot be consent.
[12] In Robinson, the court held that an illegal airport stop (based on the fact that the defendant disembarked from a flight originating in a drug profile target city and had several years earlier been arrested on a narcotics charge which was subsequently nolle prossed) presumptively tainted the ensuing consent to search. The court found that Robinson merely submitted to the apparent authority of the officer who was not justified in his belief that Robinson voluntarily consented to the search, noting: "If a doubt exists as to whether the officer was reasonable in concluding that a search was justified, such a doubt must be resolved in favor of the Defendant whose property was searched." 388 So.2d at 291.
[13] Police who observed Ingram walking down the street holding a bag, periodically stopping people and having them look into the bag, suspected it contained some kind of contraband and asked to look into it, whereupon Ingram silently handed it to them while one officer held his belt. The appellate court reversed the trial court's ruling that Ingram had consented to the search of the bag, finding that his actions had not reasonably indicated criminal activities so as to permit the officers to search the bag under a stop and frisk statute, and the mere fact that he silently complied with the officer's request to follow them outside for a look in the bag did not establish that he consented to the search.
[14] Moorehead was stopped for identification while carrying a pool cue on his way to a recreation center. He presented identification and complied with the officer's request to go to the police station to fill out a field interrogation card. While at the station, he allowed the officer to see his pool cue, in which phenobarbital was found. The court found the consent was obtained as a result of an illegal stop, search and seizure, and reversed the lower court's denial of the motion to suppress, noting that ordinarily, "consent given after an illegal arrest will not lose its unconstitutional taint." 378 So.2d at 124.
[15] Pirri's car had been stopped on a founded suspicion that it contained marijuana. The occupants were requested to empty their pockets and the officer asked to search the car without notifying Pirri of his right to refuse. The court held that the officer's request that Pirri empty his pockets was unreasonable because his seizure was not a formal arrest, and that the officer was authorized only to conduct a carefully limited, self-protective search of the outer clothing for weapons. The court found that the State failed to carry its burden of proving by clear and convincing evidence that Pirri's consent to the search of the vehicle was not a product of the illegal police action. The court held that Pirrip, while not formally arrested, was "at least de facto in custody" and that because of the coercive setting and the officer's failure to notify him of his right to refuse the search, his compliance with the request "might possibly be deemed acquiescence to authority, but it certainly does not rise to the level of free and voluntary consent to search." 428 So.2d at 286.