536 So.2d 1134 (1988)
Harol CASTILLO, Appellant,
v.
STATE of Florida, Appellee.
No. 88-579.
District Court of Appeal of Florida, Second District.
December 23, 1988.
*1135 Daniel F. Daly and Norman S. Cannella of Norman S. Cannella, P.A., Tampa, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
LEHAN, Judge.
This is an appeal from a conviction for trafficking in cocaine. Defendant contends that the trial court erred in denying his motion to suppress evidence obtained from a deputy sheriff's stop and search of the vehicle in which defendant was a passenger. Defendant entered a plea of nolo contendere while reserving the right to appeal the denial of his motion to suppress. The state stipulated that our decision as to whether or not the motion was properly denied would be dispositive of this case. We agree with defendant's contention and reverse.
The manager of a motel advised the sheriff's office that the occupants of three motel rooms had been acting suspiciously. Defendant, one of the occupants, had paid cash daily for the three rooms which were registered in the names of two other persons as well as his own. Both of the other persons had local addresses. Apparently the manager, who had seen defendant come and go in a red Chrysler LeBaron, was not certain whether defendant had been staying in any of the rooms overnight. The occupants had stayed in the rooms during the day and had declined maid service. The desk clerk thought that the identification which defendant had provided purported to be a Texas driver's license but contained a misspelled city of residence. Deputies, after a computer check, determined that a Texas driver's license with the same number was registered to a woman. Possession of a fictitious driver's license is a third-degree felony. § 322.212, Fla. Stat. (1987).[1] A detective and a deputy set up surveillance of the Chrysler and the three motel rooms.
During the surveillance, a woman and two men, all at that time unidentified, emerged from one of the rooms and entered the Chrysler. The woman drove. The men were passengers. After the Chrysler left the motel, another deputy stopped the vehicle, asked the driver to produce her driver's license and registration, and asked the passengers, who were defendant and John Finney, to produce identification. The deputy saw that defendant's identification card was not a driver's license but was an identification card of the type available at flea markets. The deputy concluded that defendant had not committed a violation of the law by possessing a fictitious driver's license.[2] While *1136 the deputy told Finney that he had stopped the vehicle because it looked like one that had been reported stolen, there apparently was no basis to suspect that the car was stolen. The deputy had actually stopped it at the request of the detective and the other deputy based upon their information as to the supposedly fictitious driver's license. They had wanted him to stop the vehicle, obtain a consent to search it, and then search it. They had told him they were looking for narcotics but otherwise gave him no basis for a belief that narcotics would be found. His testimony was that he had only a "hunch" that narcotics were involved. The deputy asked the driver whether she would object to a search of the vehicle. The driver gave her consent orally and in writing.
After searching the trunk of the vehicle with defendant's participation, the deputy discovered inside the vehicle a closed zippered bag. Inside the bag he found money, two small zip lock baggies, and jewelry. He did not at that time see the amount of money or anything in the baggies. He then called for assistance. At that point defendant grabbed something from the vehicle and fled on foot. He was soon apprehended. The zippered bag was seized and was found to contain powdered and rock cocaine which are the principal subjects of the motion to suppress.
For reasons which we will explain, these circumstances did not provide a justification for the continued detention of the vehicle and defendant (or, for that matter, of the other occupants of the vehicle) after the deputy decided that there was no violation of law from defendant possessing a fictitious driver's license. Therefore, we conclude that the discovery and seizure of the zippered bag and its contents were not lawful.
The activities of the defendant and the other occupants of the three rooms at the motel did not provide justification for the continued detention of the vehicle and its occupants. The only possible basis for the stop of the vehicle was the information about defendant's possession of what the officers had concluded was a fictitious driver's license. Defendant argues that the stop was unlawful because when the vehicle was stopped and up to the time defendant was asked to produce identification, he had not been identified as an occupant of the vehicle. But we need not decide whether the stop was unlawful for that reason. Even to assume, arguendo, that the deputy had had a reasonable suspicion that defendant was a passenger, any justification for detention disappeared at the point when the deputy decided that defendant had not committed a crime through possessing a fictitious driver's license. The record does not show that at that point defendant was free to leave. Rather, the deputy then, after a period of time not clear from the record, sought and obtained from the driver her consent to the search of the car.
We cannot agree with the argument of the state that after the point at which the deputy decided that there was no violation of law from defendant possessing a fictitious driver's license, there was shown to have been no more than an uncoercive police encounter after which there was a not improper request for a consent to search. The state did not show that after that point there was no illegal detention. The state did not show that defendant or the driver was then free to leave. Indeed, the record indicates otherwise. Under the circumstances of this case it was the state's burden to show no continued illegal detention. The state did not carry its burden. See Edwards v. State, 532 So.2d 1311, 1315 (Fla. 1st DCA 1988) (a search pursuant to defendant's consent which had been given after any justification for the stop of defendant had disappeared "was presumptively illegal unless the State could demonstrate by clear and convincing evidence that appellant freely consented to it. The State has at best demonstrated acquiescence to police authority under coercive *1137 circumstances. Because of the coercive setting and the officer's failure to notify him of his right to refuse the search request, appellant's compliance was merely acquiescence to authority and not a free and voluntary consent to search."). See also Robinson v. State, 388 So.2d 286, 291 (Fla. 1st DCA 1980) (where defendant had consented to a search after being illegally stopped, "If a doubt exists as to whether the officer was reasonable in concluding that a search was justified, such a doubt must be resolved in favor of the Defendant whose property was searched.").
The state nonetheless argues to the effect that the search was conducted pursuant to the driver's voluntary consent. This seems to be an argument that the consent cured any illegal detention. We do not agree. Under the circumstances of this case the driver's consent cannot be found to have been voluntary and must be deemed to have been the product of illegal law enforcement activity. See Norman v. State, 379 So.2d 643 (Fla. 1980); Tennyson v. State, 469 So.2d 133 (Fla. 5th DCA 1985). Consent to a search obtained after an illegal detention may be found to have been voluntary only upon "clear and convincing proof of an unequivocal break in the chain of illegality sufficient to dissipate the taint of prior official illegal action." Norman, 379 So.2d at 647. See also State v. Martin, 532 So.2d 95, 97 (Fla. 1988) (the "clear and convincing standard applies when the question of voluntariness of consent to a search arises following improper police activity ..."); Edwards; Robinson. No such unequivocal break or clear and convincing evidence was shown to exist here.
The state has raised no issue as to the entitlement ("standing") of defendant, as a passenger in the car, to raise the question of the propriety of the deputy's discovery and seizure of the zippered bag. No such issue was raised at the suppression hearing at which the trial judge asked about it or in this court in oral argument at which a judge of this court asked about it. Thus, there appears to have been a concession that no such issue exists. Presumably it was concluded that any such issue would not exist if this court determined, contrary to the state's position and as we have determined, that after the point at which the deputy decided that there was no fictitious driver's license, there must be deemed to have been a continued, illegal detention which was the equivalent of an illegal stop of the car which led to the discovery of the bag. See Wulff v. State, 533 So.2d 1191 (Fla. 2d DCA 1988); State v. Delaney, 517 So.2d 696 (Fla. 2d DCA 1987) (a passenger in an illegally stopped car, the search of which produced evidence used against the passenger in a criminal prosecution, is entitled to move to suppress the evidence on the basis of the illegal stop). To the extent defendant in this case, by arguing that the driver's consent to the search was not voluntary, questioned the legality of the search of the car in addition to the legality of its continued detention, we conclude that he was entitled to do so. The search resulted from the detention. See State v. Beja, 451 So.2d 882 (Fla. 4th DCA 1984). See also Wulff; Delaney. Compare State v. Bartz, 431 So.2d 704 (Fla. 2d DCA 1983) (in a case not shown to have involved an illegal stop of a car, a passenger in the car who had no lawful property interest in the car or in items seized from the car and who had no other basis for a legitimate expectation of privacy was not entitled to question the legality of the search which produced the seizure). Thus, the question of the propriety of the deputy's discovery and seizure of the bag has been properly before us upon defendant's motion to suppress.
Defendant's flight does not call for a different result, and the state does not argue that it does. For one thing, the search began, and also the zippered bag was found, before the flight. In any event, flight alone is not even a proper basis for a founded suspicion of criminal activity so as to justify an investigatory stop. See Bastien v. State, 522 So.2d 550 (Fla. 5th DCA 1988); Cobb v. State, 511 So.2d 698 (Fla. 3d DCA 1987). Nor does flight from an illegal detention provide a proper basis to search, see State v. Hewitt, 495 So.2d 809, 815 (Fla. 1st DCA 1986), rev. denied, 504 So.2d 768 (1987).
*1138 Accordingly, we must conclude that the motion to suppress the cocaine should have been granted.
Reversed with directions to discharge defendant.
DANAHY, A.C.J., and FRANK, J., concur.
NOTES
[1] In light of our disposition of this case, we need not address the argument of defendant, made for the first time in oral argument, that the statute is not applicable to an out of state driver's license.
[2] The identification card shown by defendant to the deputy is not in the record on appeal, and we do not know how it came to be mistaken for a Texas driver's license, assuming that the card was the same as that which the motel desk clerk had seen. In any event, the record does reflect that the deputy was satisfied that defendant did not have a fictitious driver's license.