916 So.2d 835 (2005)
Tom Allen PERRY, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 2D04-418.
District Court of Appeal of Florida, Second District.
August 3, 2005.
*836 James Marion Moorman, Public Defender, and Alisa Smith, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Elba Caridad Martin, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
Tom Allen Perry, Jr., was the passenger in a vehicle owned and operated by a known drug dealer who was on his way to deliver two ounces of methamphetamine to a confidential informant. When law enforcement stopped the vehicle to arrest the driver, a search of the driver revealed the expected two ounces of methamphetamine. A search of the car revealed a closed black bag located between the front seats of the vehicle, which contained a digital scale and a pipe. At this point, the officers did not engage the passenger, Mr. Perry, in an investigative stop pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to determine whether he knew about the drugs or paraphernalia. Rather, without further investigation, law enforcement arrested Mr. Perry for constructive possession of the paraphernalia concealed within the bag. Because law enforcement lacked probable cause to arrest Mr. Perry for constructive possession of paraphernalia, as further explained in this opinion, the trial court should have granted Mr. Perry's motion to suppress the small amount of methamphetamine found in his coin pocket during the search incident to that arrest. We therefore reverse Mr. Perry's judgment and sentence for possession of methamphetamine. In doing so, we conclude that the United States Supreme Court's recent decision in Maryland v. Pringle, 540 U.S. 366, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003), does not announce a broad rule permitting the arrest of all persons within a car any time a valid search of the car reveals drugs or other contraband.
In August 2002, based on information from a confidential informant, the City of Lakeland Police Department and the Polk County Sheriff's Office were investigating an alleged dealer in methamphetamine. That drug dealer was Tom Perry, Sr., the father of Mr. Perry. We will refer to Mr. Perry's father as "Senior," to avoid confusion. Mr. Perry, the defendant, is approximately thirty years of age.
*837 Working with the informant, law enforcement attempted to set up a controlled purchase of methamphetamine from Senior. The informant called Senior to set up the sale. All calls between the informant and Senior were monitored by law enforcement.
Based upon these calls, Senior agreed to meet the informant at a predetermined location in order to receive one-half of the purchase price for two ounces of methamphetamine. Law enforcement provided the informant with approximately $700 in traceable funds. The informant, under surveillance by law enforcement including an officer who knew Senior, met with Senior at a restaurant. Senior arrived alone. When the informant and Senior left the restaurant, law enforcement confirmed that the informant had delivered the $700 to Senior.
Officers followed Senior as he drove to his residence and went inside. Thirty minutes later, officers followed Senior when he came out of the house, entered his car, and drove to a bar. No one accompanied Senior. The officers watched as Senior met with a woman in the parking lot of the bar; then the officers followed Senior as he drove home again alone.
Approximately five minutes after Senior arrived at his home, the woman whom he had met at the bar drove up and entered the home. The woman remained in the home for fifteen or twenty minutes and then left. In the interim, the informant had called Senior and learned that Senior would be leaving his home soon to deliver the drugs to the informant at a specified location in exchange for the balance of the purchase price.
Five minutes after the woman left, law enforcement observed Senior's car leave the residence. Although Senior had been alone in his travels up until this point, law enforcement now observed that there was an unknown passenger in the vehicle. Officers did not actually see Senior or the passenger enter the car. The car headed in the general direction of the designated location for the drug sale. On the way, officers stopped the vehicle and immediately placed Senior under arrest. In his pocket, officers discovered the two ounces of methamphetamine intended for delivery to the informant. This occurred at approximately 7:30 p.m.
Officers searched Senior's vehicle incident to his arrest. Mr. Perry was immediately ordered to step out of the vehicle. He was directed to step to the back of the vehicle and was given Miranda[1] warnings. During the search of the vehicle, officers discovered a small black bag between the front seats of the vehicle. The officer who performed the search could not remember if the bag was in plain view. The officer opened the black bag and found a digital scale and a glass tube pipe with a burn mark. Without any further discussion, an officer immediately placed Mr. Perry under arrest for possession of the drug paraphernalia. From the record, it is not clear that the officers had even identified Mr. Perry or knew he was related to Senior at the time of his arrest.
According to the officers, the discovery of the paraphernalia was the sole basis for the arrest and subsequent search of Mr. Perry. That search revealed a small amount of methamphetamine in the coin pocket of Mr. Perry's pants. The State ultimately dropped the charge against Mr. Perry regarding the possession of the paraphernalia found in the small black bag but charged him with possessing the methamphetamine found in his coin pocket.
*838 Prior to December 15, 2003, the outcome of this case would have been relatively simple. Mr. Perry was merely a passenger in a car driven by a known drug dealer. The police clearly had developed evidence that supported probable cause to reasonably believe that Senior knew about the digital scale and other paraphernalia in his car. However, they had no factual basis to conclude that the unknown passenger, who had only recently entered the car, had any knowledge about a small black bag on the floor between the seats. Although the circumstances justified an investigative stop of Senior's passenger pursuant to Terry, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, the officers did not pursue this option to develop additional evidence. Based upon controlling precedent, these circumstances were insufficient to support the probable cause necessary to arrest Mr. Perry for constructive possession of paraphernalia. See Cady v. State, 817 So.2d 948 (Fla. 2d DCA 2002); McGowan v. State, 778 So.2d 354 (Fla. 2d DCA 2001); Zandate v. State, 779 So.2d 476 (Fla. 2d DCA 2000); Rennard v. State, 675 So.2d 1006 (Fla. 2d DCA 1996); Rogers v. State, 586 So.2d 1148 (Fla. 2d DCA 1991); see also Walker v. State, 741 So.2d 1144 (Fla. 4th DCA 1999); Edwards v. State, 532 So.2d 1311 (Fla. 1st DCA 1988).
This line of cases arose out of United States Supreme Court precedent requiring some type of individualized suspicion to support probable cause to arrest one person found in a group of people, one or more of whom are suspected of some criminal wrongdoing. See United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); see also Ybarra v. Illinois, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) ("[a] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.... Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person.").
In Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210, an informant told officials that he was scheduled to buy counterfeit gasoline ration coupons from a person named Buttitta at a designated place. Law enforcement followed Buttitta's car to the appointed location and approached the vehicle. An officer found Buttitta in the driver's seat, Di Re in the passenger seat, and the informant in the back seat. The informant was holding two counterfeit gasoline ration coupons, which he said he obtained from Buttitta. All three occupants of the car were detained and ultimately arrested and searched. The search of Di Re revealed one hundred counterfeit gasoline ration coupons. Id. at 583, 68 S.Ct. 222.
The Supreme Court held the officer lacked probable cause to arrest Di Re for purportedly engaging in a conspiracy to sell the counterfeit coupons. The Court explained:
There is no evidence that ... the officers had any information indicating that Di Re was in the car when Reed obtained ration coupons from Buttitta, and none that he heard or took part in any conversation on the subject. Reed, the informer, certainly knew it if any part of his transaction was in Di Re's presence. But he was not called as a witness by the Government, nor shown to be unavailable, and we must assume that his testimony would not have been helpful in bringing guilty knowledge home to Di Re.
An inference of participation in conspiracy does not seem to be sustained by the facts peculiar to this case. The argument that one who "accompanies a criminal to a crime rendezvous" cannot *839 be assumed to be a bystander, forceful enough in some circumstances, is farfetched when the meeting is not secretive or in a suspicious hide-out but in broad daylight, in plain sight of passersby, in a public street of a large city, and where the alleged substantive crime is one which does not necessarily involve any act visibly criminal.... Presumptions of guilt are not lightly to be indulged from mere meetings.
Moreover, whatever suspicion might result from Di Re's mere presence seems diminished, if not destroyed, when Reed, present as the informer, pointed out Buttitta, and Buttitta only, as a guilty party. No reason appears to doubt that Reed willingly would involve Di Re if the nature of the transaction permitted. Yet he did not incriminate Di Re. Any inference that everyone on the scene of a crime is a party to it must disappear if the Government informer singles out the guilty person.
Id. at 593-94, 68 S.Ct. 222. The Supreme Court thus held the dispositive evidence obtained from Di Re was the fruit of an illegal search. Id. at 595, 68 S.Ct. 222.
Recently, however, the United States Supreme Court issued its opinion in Maryland v. Pringle, 540 U.S. 366, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). This opinion requires that we take a closer look at the outcome in this case and, specifically, at whether Pringle may have effectively overruled our precedent involving circumstances similar to those presented here.
In Pringle, the defendant was a passenger in the front seat of a car when it was validly stopped at 3:16 a.m. Id. at 368, 124 S.Ct. 795. The owner of the car, who was also the driver, consented to a search of the vehicle. The car also contained a back seat passenger. The back seat of the vehicle had a center armrest that had been pushed up against the back seat. When officers lowered the armrest, they found five plastic baggies of cocaine. The officers also discovered $763 in cash in the glove compartment directly in front of Pringle. When questioned, all of the occupants of the car disavowed ownership of the drugs. Id. at 368-69, 124 S.Ct. 795. The Supreme Court explained:
The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. We have stated, however, that "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt," and that the belief of guilt must be particularized with respect to the person to be searched or seized.
Id. at 371, 124 S.Ct. 795 (citations omitted).
The Supreme Court concluded:
We think it entirely reasonable from these facts that any or all three of the occupants had knowledge of, and exercised control over, the cocaine. Thus a reasonable officer could conclude that there was probable cause to believe Pringle committed the crime of possession of cocaine, either solely or jointly.
Id. at 372, 124 S.Ct. 795.
The Supreme Court also noted,
Pringle and his two companions were in a relatively small automobile.... [I]t was reasonable for the officer to infer a common enterprise among the three men. The quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him.
Id. at 373, 124 S.Ct. 795; see also Dixon v. State, 343 So.2d 1345 (Fla. 2d DCA 1977) (holding that smell of marijuana and sight of smoke emanating from an automobile *840 constitutes probable cause to believe all occupants had actual or constructive possession of marijuana).
Notably, in Pringle, the Supreme Court did not recede from its decision in Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210. Rather, the Court distinguished Di Re, as follows:
In Di Re, ... Reed informed the investigator that Buttitta had given him counterfeit coupons. Thereupon, all three men were investigated and searched. After noting that the officers had no information implicating Di Re and no information pointing to Di Re's possession of coupons, unless presence in the car warranted that inference, we concluded that the officer lacked probable cause to believe that Di Re was involved in the crime. 332 U.S. at 592-594 [68 S.Ct. 222].... No such singling out occurred in [Pringle's] case; none of the three men provided information with respect to the ownership of the cocaine or money.
Pringle, 540 U.S. at 373-74, 124 S.Ct. 795.
If the Supreme Court intended its opinion in Pringle to stand for the proposition that the discovery of contraband in a car provided law enforcement with probable cause to arrest each of its occupants, even if the contraband was concealed or not readily identifiable as contraband, the Court would have been compelled to recede from Di Re. Because the Court declined to do so, it becomes necessary to identify the distinguishing factor in Pringle which permitted the arrest of all of the vehicle's occupants.
There are two important factors that distinguish this case and the case of Di Re from the circumstances presented in Pringle. First, based upon the facts revealed in the opinion in Pringle, the drugs in that case were found as a matter of serendipity. The police had done no investigation prior to the stop of the vehicle and were not involved in a controlled purchase with an individual occupant. Thus, the police stopped the car without any suspicion as to any individual within that car. Second, the officers in Pringle did not immediately arrest all three occupants of the vehicle upon discovering the drugs in the back seat. Rather, the officers conducted the equivalent of a Terry stop and investigation of the vehicle's occupants prior to deciding to arrest each of them for possession of the drugs found in the vehicle. The officers asked each occupant whether the drugs belonged to them. It was important to the Supreme Court that none of the suspects admitted to ownership of the contraband when questioned. 540 U.S. at 374, 124 S.Ct. 795.[2] As a result, the police were caught in a situation where, despite their investigative attempts, serendipity left them with the knowledge that a crime had been committed by at least one occupant of the vehicle, but no particularized suspicion regarding any individual occupant. They could either arrest everyone or simply confiscate the contraband and allow everyone to leave. Particularly in light of the placement of the drugs in the back seat of the vehicle and the location of the cash in the glove compartment, all three suspects were equally likely to be guilty of an offense. The Supreme Court *841 wisely did not wish to announce a rule that a thirty-three percent probability precluded an arrest of any occupant under the circumstances. Rather, the knowledge that a crime was being committed by one or more occupants, the lack of individualized suspicion toward any individual occupant, and the refusal of each occupant to acknowledge his role in the crime provided law enforcement with probable cause to arrest all occupants. Indeed, the opinion at least suggests that one occupant's admission that the drugs were his may have dissipated any probable cause as to the remaining occupants.
In Mr. Perry's case, the developed facts permitted an immediate arrest of Senior for possession of the scale and other paraphernalia. The police had detailed information about Senior's activities. The methamphetamine for which the officers were actually searching was found hidden on Senior's person. They had no need to question Senior about ownership of these drugs. In contrast, the officers knew that Mr. Perry had been in the car for only a few minutes. When the officers found the black bag, they did not perform an investigation. They did not give Senior or Mr. Perry the option of admitting that the bag belonged to one of them. Perhaps if the officers had performed the same investigative inquiry in this case that was performed in Pringle, they could have arrested both Senior and Mr. Perry if neither of them admitted ownership of the paraphernalia in the black bag. However, based upon the limited information obtained by law enforcement prior to the arrest, the possibility that Mr. Perry knew the contents of the black bag did not rise to the level of probable cause.
We emphasize that the facts in this case would have permitted a Terry stop and investigation of Mr. Perry. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Certainly the officers may have had a reasonable suspicion that Mr. Perry's presence in the car was not accidental but perhaps a form of protection for Senior against arrest or violence. The police were certainly free to question Mr. Perry about these circumstances and to obtain his identification and continue their investigation to develop probable cause. They may have been justified in performing a patdown to make certain Mr. Perry was not armed. However, that did not occur in this case and nothing in the record convinces us that the drugs would have been located in a patdown for weapons.
Because the methamphetamine found on Mr. Perry's person was the fruit of an illegal search, his motion to suppress should have been granted. We reverse the conviction for possession of methamphetamine and remand for the trial court to discharge Mr. Perry.
Reversed and remanded for discharge.
STRINGER and CANADY, JJ., Concur.
NOTES
[1] See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] It is noteworthy that Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210, predates Terry, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Before Terry was issued in 1968, the Fourth Amendment's guarantee against unreasonable seizures of persons was analyzed only in terms of arrest, probable cause for arrest, and warrants based on such probable cause. See Dunaway v. New York, 442 U.S. 200, 207-08, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Terry for the first time recognized an exception to the requirement that Fourth Amendment seizures of persons must be based on probable cause. Id. at 208-09, 99 S.Ct. 2248. Thus at the time Di Re was decided, the concept of an investigatory stop was not developed.