949 So.2d 309 (2007)
STATE of Florida, Appellant,
v.
Kelly Louise GRIFFIN, Appellee.
No. 1D06-3154.
District Court of Appeal of Florida, First District.
February 20, 2007.
*310 Bill McCollum, Attorney General, and William L. Nelson, III, Assistant State Attorney, Shalimar, for Appellant.
Ashley Smith Herndon of Dewrell & Herndon, Shalimar, for Appellee.
THOMAS, J.
The State appeals the trial court's order granting Appellee's motion to suppress evidence discovered as a result of a law enforcement's dog alert on her vehicle. The trial court found that the officers did not have probable cause to search Appellee because a dog alert provides probable cause to search only the car. Because we are constrained by Williams v. State, 911 So.2d 861 (Fla. 1st DCA 2005), we affirm the trial court's suppression of the evidence. Were we to address for the first time whether a dog alert provided probable cause to search Appellee, we would reverse the trial court's order based on Maryland v. Pringle, 540 U.S. 366, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003), and Illinois v. Caballes, 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). We are foreclosed from reaching this decision in light of our prior precedent; therefore, we certify a question of great public importance and address this issue below, as the far-reaching implications of Pringle have not yet been analyzed by our court.
Because we affirm the trial court's ruling that the officers did not have probable cause to search Appellee, we do not need to reach the second issue on appeal, whether the trial court erred in finding that the length of Appellee's detention was unreasonable; however, we believe it is necessary to consider the second issue in the event of further judicial review, and find the trial court erred in ruling that the detention was unreasonable. The facts clearly show that any delay was de minimis and not a constitutional violation. See State v. Williams, 565 So.2d 714 (Fla. 3d DCA 1990).

*311 Facts and Procedural Background

A canine handler for the Okaloosa County Sheriff's Department stopped Appellee for speeding and failure to maintain a single lane. Five to ten minutes later, while writing the traffic citation, a second deputy arrived; because Department procedure requires that another officer be present for a dog sniff, the canine handler stopped writing Appellee's citation and walked the dog around the vehicle. The dog alerted to the odor or presence of contraband or narcotics on the driver's side of the car, where Appellee, as the sole occupant in the vehicle, was sitting during the entire episode. The canine handler testified that walking the dog around Appellee's car took between 20 to 90 seconds, and he completed writing the citation immediately following the walk-around. The canine handler acknowledged that before he walked the dog around Appellee's car, he had no reasonable, articulable suspicion to believe there was criminal activity afoot.
After the alert, the canine handler asked Appellee to step out of her vehicle. The second deputy conducted a pat-down search of Appellee, and a crack cocaine cylinder fell from her pants leg. No other contraband was found in the vehicle. Appellee was arrested approximately 15 minutes after the traffic stop began and was then transported to the jail, where law enforcement officers discovered more "crack cocaine screens" and two Ritalin pills in her purse, for which she had no prescription.
Appellee was charged with possession of drug paraphernalia and possession of a controlled substance; she pled not guilty and filed a motion to suppress all drug evidence. At the suppression hearing, Appellee did not raise any claim regarding the accuracy of the dog sniff, the training of the dog, or possible false alerts. The trial court ruled that the officers did not have probable cause to search Appellee's person and that the search occurred after an unreasonably lengthy detention of Appellee. The State appeals both of the trial court's findings.

Dog Alerts and Probable Cause
We begin by recognizing that "the use of a well-trained narcotics-detection dog . . . during a lawful traffic stop, generally does not implicate legitimate privacy interests." Illinois v. Caballes, 543 U.S. at 409, 125 S.Ct. 834 (citing United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)). A person has no reasonable expectation of privacy in odors that emanate from a car in a public place. Hearn v. Bd. of Pub. Educ., 191 F.3d 1329, 1332 (11th Cir.1999). Once a dog alerts to a car, therefore, probable cause exists to search the car. Id. at 1333.
Appellee does not assert that the deputy lacked probable cause to believe she had committed traffic violations; neither does the State assert that any probable cause or reasonable suspicion existed, other than the dog sniff and alert, to justify the search of Appellee. The issue raised here is whether a properly trained narcotics-detection dog sniff and alert on Appellee's vehicle provided law enforcement with probable cause to search Appellee, the driver and sole occupant of the vehicle.
In Pringle, the Supreme Court held that when law enforcement officers discovered drugs in an armrest in the backseat of a vehicle and cash in the glove compartment, the officers had probable cause to arrest all the passengers if no passenger admitted ownership of the contraband, because the contraband could belong to any one of them. 540 U.S. at 374, 124 S.Ct. 795. Although probable cause in Pringle was established by an actual seizure of contraband, we believe that it is the existence of probable cause, not the extent of probable cause, which authorized the search. Here, *312 the dog alert established probable cause that both the car itself and Appellee, as the sole occupant of the car, possessed contraband; therefore, the deputy not only had the lawful authority to search Appellee's car, but also probable cause to search Appellee.
However, under Williams, we must find that the dog alert provided probable cause to search Appellee's car, but not to search her person. 911 So.2d at 861. This court's opinion in Williams cites two Second District cases to support its holding: Cady v. State, 817 So.2d 948 (Fla. 2d DCA 2002), and Bryant v. State, 779 So.2d 464 (Fla. 2d DCA 2000); however, the Second District recently noted that Pringle "may have effectively overruled our precedent involving circumstances similar to those presented here." Perry v. State, 916 So.2d 835, 839 (Fla. 2d DCA 2005). Although the Second District ultimately found that Pringle did not overrule its prior precedent, we would find that the cases this court relied on in Williams are no longer persuasive under Pringle.
In both Cady and Bryant, the Second District was concerned that a defendant should not be subjected to a search if it is possible that the narcotics odor is residual and does not necessarily belong to the defendant. In our view, however, that possibility does not detract from the possibility that the car or the passengers possess contraband. Quite the contrary; as one court has noted, the power of a well-trained narcotics-detection dog to alert the residue of contraband only increases the possibility that the car contains contraband. State v. Cabral, 159 Md.App. 354, 859 A.2d 285, 300 (2004) (stating that the fact that a trained dog is capable of detecting odors up to 72 hours after contraband is present in the vehicle only strengthens the probable cause finding due to the dog's superior sense of smell); accord U.S. v. Johnson, 660 F.2d 21, 23 (2d Cir.1981) (noting the fact that a dog can alert to residual odors "misconstrues the probable cause requirement. Absolute certainty is not required by the Fourth Amendment. What is required is a reasonable belief that a crime has been or is being committed."). Here, the fact that the dog alert may have been in response to contraband no longer present in the car does not mean that law enforcement failed to rely on a reasonable probability that contraband was present on Appellee's person or in her car.
Additionally, other courts have upheld searches involving similar facts to those presented here. See State v. Ofori, 170 Md.App. 211, 906 A.2d 1089, 1099 (2006) (holding that the Pringle decision is "absolutely dispositive" in establishing that a dog alert on a car provides probable cause to search the driver and passengers because of the "close association" between the contraband and the car's occupants). See also United States v. Klinginsmith, 25 F.3d 1507 (10th Cir.1994) (explaining that a dog alert to a car provided probable cause to arrest the defendant). In Ofori, the Maryland court explained that "either finding the drugs in the vehicle, as in Pringle, or probable cause to believe that they are in the vehicle, as in this case, necessarily implicates the driver and passengers." 906 A.2d at 1099.
We believe that our decision in Williams cannot be squared with the holding in Pringle and its definition and discussion of probable cause. In Pringle, the Supreme Court stated that the "standard of probable cause protects `citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime,' while giving `fair leeway for enforcing the law in the community's protection.'" 540 U.S. at 370, 124 S.Ct. 795 (quoting Brinegar v. United States, 338 *313 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). The Court recognized that it had repeatedly held that probable cause is a "practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Id. (internal quotations omitted). "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." Id. at 371, 124 S.Ct. 795. The underlying "`substance of all the definitions of probable cause is a reasonable ground for belief of guilt' . . . and that the belief of guilt must be particularized with respect to the person to be searched or seized.'" Id. (citing Brinegar, 338 U.S. at 175, 69 S.Ct. 1302; Ybarra v. Illinois, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979)). Most importantly, the probable cause standard is not synonymous with "`the quanta . . . of proof' appropriate in ordinary judicial proceedings" and "standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable cause] decision.'" Id. (quoting Brinegar, 338 U.S. at 173, 69 S.Ct. 1302; and Illinois v. Gates, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)) (emphasis added).
The facts and principle announced in Pringle are instructive here. In Pringle, the police seized evidence of a crime from a car with multiple passengers; here, based on the dog alert, police had probable cause to believe evidence of a crime existed either in the vehicle or on Appellee's person. In both Pringle and here, law enforcement had a reasonable belief that the passengers in the car had committed or were committing a crime which provided the probable cause to search and arrest the defendants.
We find that other courts' reliance on theoretical possibilities, such as "residual odor," Bryant, 779 So.2d at 465, or statements such as "proximity to contraband is insufficient to establish constructive possession," Cady, 817 So.2d at 949, in evaluating probable cause are simply untenable in light of Pringle. Such analyses are technical in nature and more appropriate in criminal trials in which guilt beyond a reasonable doubt must be determined, not in trial courts considering motions to suppress. We believe the Second District was correct to question the viability of its precedent under Pringle, even if it ultimately disagreed. See Perry, 916 So.2d at 839. We think the Second District's analysis in Bryant and Cady, and our reliance on such authority in Williams, runs afoul of the Supreme Court's holding by confusing the quanta of proof necessary for conviction with the quanta of proof necessary to support a finding of a "reasonable ground for belief of guilt" that a person possesses contraband.
Here, there was a reasonable ground for belief that Appellee possessed contraband. Appellee was alone in the vehicle, was sitting in the area where the dog alerted during the walk around, and admitted to being the primary driver of the vehicle. Under Pringle and related cases, we would find that a trained dog alert provides probable cause to search a driver who is the sole occupant of the car.
We find the rationale and analysis in Ofori particularly persuasive, especially its understanding and analysis of the holding in Pringle:
The Supreme Court's decision in Maryland v. Pringle is absolutely dispositive. Because of the close association between contraband in a vehicle and the driver of (or other passenger in) the vehicle, either finding the drugs in the vehicle, as *314 in Pringle, or probable cause to believe that they are in the vehicle, as in this case, necessarily implicates the driver and passengers. Whatever the level of certainty we have reached with respect to the presence of contraband itself, its association with the occupants of the vehicle is the same. In terms of that inculpatory association, the Supreme Court's unanimous opinion observed:
We think it an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine. Thus, a reasonable officer could conclude that there was probable cause to believe Pringle committed the crime of possession of cocaine, either solely or jointly.
540 U.S. at 372, 124 S.Ct. 795.
. . . . .
In any event, we are applying the law as we laid it down in State v. Funkhouser, 140 Md.App. 696, 721, 782 A.2d 387 (2001):
The probable cause developed by the initial canine "alert" was at one and the same time probable cause to believe both 1) that drugs were probably then in the car and 2) that its driver and sole occupant probably was then or recently had been in unlawful possession of those drugs.
The fact that the appellee here was not the "sole occupant," but only one of two, does not alter the result.
Ofori, 906 A.2d at 1099-1102 (emphasis omitted) (internal citations omitted).
It is our belief that once the officers searched Appellee's car and found no contraband, the officers then not only had the authority, but also the duty, to search Appellee. When the dog alerted, there was probable cause that contraband was in the car; once the car was cleared, by the process of elimination, probable cause then existed to search Appellee.
Our constitution requires us to construe the right to be free from unreasonable searches or seizures "in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court." Art. 1, § 12, Fla. Const. See Golphin v. State, 945 So.2d 1174, 1190 (Fla.2006) ("[B]y Florida constitutional mandate [in article I, section 12] we are not free to follow the interpretative path of . . . other states and must be firmly tied to the interpretative construct of our United States Supreme Court decisions."). Although we are bound by our prior precedent, we believe such precedent is contrary to prevailing Fourth Amendment doctrine; therefore, we find that this case presents a question of great public importance, which we certify to the Florida Supreme Court.

Unreasonable Detention
As mentioned above, we would reverse the trial court's ruling that the dog sniff occurred after an unreasonable detention of Appellee. We find the following brief description of the legal principles applicable to this issue succinct and correct:
A canine sniff of the exterior of a car conducted during a traffic stop that is lawful at its inception and otherwise executed in a reasonable matter does not infringe upon a constitutionally protected interest in privacy. Such a dog sniff may be the product of an unconstitutional seizure, however, if the traffic stop is unreasonably prolonged before the dog is employed. Once an officer has decided to permit a routine traffic offender to depart with a ticket, a warning, or an all clear, the Fourth Amendment applies to limit any subsequent detention or search. We recognize, however, that this dividing line is artificial and that *315 dog sniffs that occur within a short time following the completion of a traffic stop are not constitutionally prohibited if they constitute only de minimis intrusions on the defendant's Fourth Amendment rights.
U.S. v. Alexander, 448 F.3d 1014, 1016 (8th Cir.2006) (internal citations omitted).
In Alexander, the police detained a driver for "at most" four minutes after informing him that he would receive a warning ticket. The court noted that while the Supreme Court in Caballes was not required to address the question of whether a dog sniff conducted after a traffic stop was unconstitutional, the Supreme Court did note that "conducting a dog sniff would not change the character of a traffic stop that is lawful at its inception and otherwise conducted in a reasonable manner." Alexander, 448 F.3d at 1017 (quoting Caballes, 543 U.S. at 408, 125 S.Ct. 834). Thus, the Eighth Circuit stated, "It is precisely this reasonableness inquiry that led us to recognize . . . that the artificial line marking the end of a traffic stop does not foreclose the momentary extension of the detention for the purpose of conducting a canine sniff of the vehicle's exterior." Id.
Here, the trial court found that Appellee's traffic stop was unreasonably delayed because the officer stopped writing the ticket in order to conduct the walk-around. We disagree. "[T]he mere fact that the officer interrupted his writing of the citation in order to accomplish the drug sniff . . . did not unnecessarily extend the traffic stop." State v. Brown, 691 So.2d 637, 638-39 (Fla. 5th DCA 1997); cf. U.S. v. Boyce, 351 F.3d 1102 (11th Cir. 2003) (holding that driver was unreasonably detained where the officer issued a warning ticket, informed the driver that a dog had been called to conduct a search, waited six minutes to check the driver's criminal history, then waited another six minutes before conducting the dog sniff). Importantly, nothing in the record here supports a factual finding that the stop was conducted in an unreasonable manner or improperly delayed. The canine officer testified he did not recall even asking for back-up assistance, and there is no evidence he was stalling to allow a cover officer to arrive. Any slight delay was not unreasonable. If any intrusion into Appellee's liberty interests occurred, it was de minimus and, therefore, not unconstitutional. Williams, 565 So.2d at 714.
Because this case presents a question of great public importance, we certify the following question to the Florida Supreme Court in accordance with Article V, section 3(b)(4) of the Florida Constitution and Florida Rule of Appellate Procedure 9.030(a)(2)(A)(v):
WHETHER, UNDER THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION, A TRAINED NARCOTICS-DETECTION DOG ALERT OF A VEHICLE PROVIDES PROBABLE CAUSE TO SEARCH THE VEHICLE'S DRIVER WHO IS ALSO THE SOLE OCCUPANT OF THE VEHICLE?
AFFIRMED; QUESTION CERTIFIED.
WOLF, J., concurring with written opinion; PADOVANO, J., concurring in result only with written opinion.
WOLF, J., Concurring.
I concur with Judge Thomas' well-reasoned opinion. I write only to emphasize why I believe the Florida Supreme Court should take jurisdiction of this case. The reasons are:
1. Emerging case law cited in Judge Thomas' opinion raises doubt about the validity of our prior decision in Williams v. State, 911 So.2d 861 (Fla. 1st DCA *316 2005), as well as the Second District's decisions cited therein. Police officers need immediate and definitive statewide guidance as to how to proceed in similar type situations.
2. It is perfectly reasonable that after an alert by a dog, whose accuracy has not been challenged, the police continue to conduct an investigation concerning whether the sole occupant of the vehicle possesses contraband. This investigation may include a dog sniff or search of the person.
3. Not allowing further investigation under these circumstances would provide a method for criminals schooled in the law to avoid detection.
PADOVANO, J., concurring in the result only.
I join in the decision to affirm the suppression order because I believe it is correct and not because I think that this court is powerless to reject one of its own precedents, as the majority has evidently concluded. Florida courts have consistently held that a dog alert on a car does not establish probable cause to search a person in the car. Nothing in the federal case law cited in the majority opinion suggests that the Florida courts should recede from this rule.
The majority combines one principle from Maryland v. Pringle and another from Illinois v. Caballes to arrive at a conclusion that does not necessarily follow. We know from the holding in Pringle that the discovery of drugs in a car pursuant to a lawful search gives police officers probable cause to arrest the occupants of the car. We know from Caballes that a dog alert on a car establishes probable cause to search the car. The majority extrapolates from these two points to conclude that a dog alert on a car establishes probable cause to search the occupants. With all due respect, I believe this logic is unsound. It treats the probability that drugs may be in the car as if it were the same as the actual discovery of drugs in the car.
An alert on a car by a trained narcotics dog establishes a probability that there are drugs in the car. That probability gives the police officers a right to search the car under the principle established in Caballes. If the probability turns out to be correct and the police find drugs in the car, then, and only then, do they have a right to arrest the occupants of the car under the principle established in Pringle. The Court did not state or even suggest in Pringle, that a dog alert on a car gives the officers the right to skip past all of the intermediate steps (searching the car, finding drugs, arresting the occupants, and then searching the occupants incident to the arrest) and to proceed directly with a warrantless search of the occupants of the car. The justification for the personal search in Pringle was that the officers had found drugs in the car, not that there might have been drugs in the car.
The fallacy in the majority opinion is that it conflates the justification for searching a place with the justification for searching a person. It has never been the law that a police officer may search a person merely because that person is located in a place the officer is otherwise authorized to search. As the Supreme Court explained in Ybarra v. Illinois, 444 U.S. 85, 91, 100 S.Ct. 338 (1979),
[w]here the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search . . . the premises where the person may happen to be.
*317 (emphasis added) Yet that is precisely what the majority is advocating in the present case. It has assumed that probable cause to search the car necessarily establishes probable cause to search a person in the car. That is simply not the law.
In the present case, by the time the police officers conducted a personal search of the defendant, they knew from her identification that she was not the owner of the car. Nor was there anything else about the incident that would have focused the officers' suspicion on her in particular. It is true that the defendant was the driver and that the dog alerted somewhere on the driver's side of the vehicle, but the officer stated that the dog did not alert on her. Moreover, probable cause was not shown by the process of elimination as the majority concludes. The officers searched the defendant before they searched the car.
The majority opinion portrays the issue in this case as one of "great public importance" and asks the Supreme Court to consider it in light of the "far reaching implications" of the Pringle decision. With respect for my colleagues, I think this characterization overstates the issue. It is a simple issue that the district courts have resolved over and over again. Many of the Florida cases holding that a dog alert on a car does not establish probable cause to search an occupant of the car, including our own decision in Williams, came after the United States Supreme Court decision in Pringle.
As recently as last summer, the Fourth District Court of Appeal held in Rehm v. State, 931 So.2d 1071 (Fla. 4th DCA 2006) that a dog alert on a bicycle did not justify a personal search of the rider. The court was not breaking new ground on this point. To the contrary, the court observed that "[i]t is well established that a dog alert to a vehicle, or a seat in a vehicle, does not, in and of itself, provide sufficient probable cause to search the driver or a passenger." Rehm, 931 So.2d at 1072. The court went on to list numerous Florida cases that stand for this proposition. The court in Rehm had the benefit of the Supreme Court's opinion in Pringle but evidently concluded, as I have, that it has no bearing on the issue.
The majority quotes Judge Altenbernd's statement in Perry v. State, 916 So.2d 835, 839 (Fla. 2d DCA 2005) that Pringle may have "effectively overruled our precedent involving circumstances similar to those presented here." However, this statement was taken out of context. In the Perry opinion, the court was referring to other cases in which police officers had discovered drugs in a car and then attempted to justify a search of an occupant. The question the court was addressing when it made the quoted statement was whether the discovery of drugs invariably justifies the arrest of an occupant of a car, or whether there are circumstances in which it does not. The court was not referring to the long line of Florida cases holding that a dog alert is insufficient to establish probable cause to arrest an occupant of the car. In fact, neither Perry nor Pringle even involved a dog alert. The Pringle decision does not require reconsideration of the point made in these cases and, contrary to the implication in the majority opinion in this case, the court in Perry did not suggest that it does.
The change in the law the majority advocates is one that would have serious consequences if it is ultimately adopted. If the majority is correct, a dog alert on a bus would give police officers probable cause to search every person on the bus. It is true that in the present case, the defendant was the only person in the vehicle, but if Pringle could be applied in the way the majority is proposing, it would not matter how many people were in the vehicle. *318 The court held in Pringle that the discovery of drugs in a car justifies the search of all of the occupants of the car. If this principle is extended to encompass dog alerts, then all of the occupants of the car would be subject to a personal search, as well.
Narcotics dogs have such an acute sense of smell that they can detect not only the presence of drugs, but also the fact that drugs have been present in a particular location at some time in the recent past. As the majority has argued, the possibility of residual odors is not a good reason to prevent police officers from searching a vehicle; but I think it is a very good reason to hold that a dog alert does not justify a search of the driver or passengers. It is not difficult to imagine the many situations in which innocent people would be subject to personal searches if a dog alert on a car were enough, standing alone, to justify a search of the occupants.
For instance, an innocent worker driving a fleet vehicle could be subjected to a personal search without any real justification. If a dog were to alert on the vehicle, the worker would be held accountable not only for his or her own conduct, but also for the conduct of many other employees who had access to the vehicle. For the same reason, an innocent vacationer driving a rental car might have to suffer the indignity of a personal search on the roadside because of the illegal activity of a previous renter. And in the same way, a person who is returning a loaner car to the repair shop could be subjected to a personal search in the absence of the slightest suspicion that he or she personally had done anything wrong.
As these examples illustrate, we cannot afford to confuse the justification for searching a vehicle with the justification for searching a person in the vehicle. If police officers have a lawful basis to search a vehicle for drugs and actually find drugs in the vehicle, then they have the right to search the occupants. But to hold that police officers have a right to search the occupants of a vehicle merely because there is a possibility that drugs are located in the vehicle would push the limit of law enforcement authority well beyond that recognized in Pringle.
I join in the decision to affirm, but, unlike my colleagues in the majority, I do not do so reluctantly. The suppression order is correct, as are the legal precedents on which it is based.