586 A.2d 740

**Gilbert H. RICKS**

v.

**STATE of Maryland.**

**No. 67, Sept. Term, 1990.**

Court of Appeals of Maryland.

March 5, 1991.

Alan L. Cohen (Paul Michael Polansky, P.A., both on brief), Baltimore, for petitioner.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ., and CHARLES E. ORTH, Jr. and MARVIN H. SMITH, Judges of the Court of Appeals (retired), Specially Assigned.

MURPHY, Chief Judge.

We granted certiorari in this case to determine whether, in the circumstances, a warrantless police search of a piece of luggage, conducted essentially contemporaneously with a valid arrest of the owner of the luggage, violated Fourth Amendment precepts.

## I.

Gilbert Ricks was charged in the Circuit Court for Wicomico County with a number of drug offenses. Prior to trial,

he moved to suppress a quantity of cocaine, marijuana and related paraphernalia which the police had seized following a search of his luggage. Ricks claimed, *inter alia*, that absent a search warrant, the search was illegal. The court (Simpson, J.) found that Ricks's arrest was lawful and that the evidence taken from his luggage was properly seized incident to his arrest.

At the trial, Ricks was convicted on all counts and sentenced to imprisonment for fifteen years. On appeal, he contended that even if the arrest was lawful, the search of his luggage was unlawful without a search warrant; and that in any event it exceeded the permissible scope of a search incident to an arrest as articulated in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The Court of Special Appeals held that the arrest was valid and because Ricks's bag was in the area of his reach at the time of the arrest, the warrantless search incident to his arrest was conducted in conformity with the principles enunciated in *Chimel*. *Ricks v. State*, 82 Md. App. 369, 571 A.2d 887 (1990).

## II.

The evidence at the suppression hearing disclosed that police authorities received an anonymous tip by telephone that Ricks would arrive in Salisbury by Trailway bus from Baltimore on Friday, October 14, 1988, at approximately 6 p.m.; that he would be carrying a brownish to maroon fold-over soft luggage bag with a lock on it; and that Ricks would be carrying cocaine for sale in the Salisbury area. The anonymous caller gave an extremely detailed description of Ricks. Upon investigation, the police ascertained that Ricks had a prior CDS violation as well as a conviction for robbery.

Acting on this information, Ricks was accosted by Sergeant Bacon of the Maryland State Police as he emerged from the 6:05 P.M. Trailways bus in Salisbury. Ricks matched the description given by the tipster and was carry-

ing the described fold-over luggage bag. After "patting down" Ricks's outer clothing for a weapon, and finding none, Bacon asked Ricks to accompany him to his police car and to place his bag on the trunk of Bacon's vehicle. Ricks complied. About a minute and a half later, Trooper Aaron arrived on the scene. At that time, Ricks was within arms reach of his bag, standing behind the vehicle with Sergeant Bacon. Aaron testified that there were then three other officers on the scene, one of whom asked Ricks for consent to search his bag. Ricks refused. According to Ricks's testimony:

> "After that, we kept standing out there. I am standing— they are surrounding me. I am standing next to the back of Sergeant Bacon's car, and so, then Trooper Aaron was telling me that either I consent to searching the bags or they was going to call the dogs. Either way, we weren't going to leave until we went into the bags."

Aaron testified that approximately fifteen minutes later the police narcotics canine, Dusty, arrived accompanied by Deputy Wilkinson. One of the officers took Ricks's bag off of the trunk of the car and placed it on the sidewalk. The dog scratched the bag, an indication that it contained narcotics.[1] At that point, Ricks was again asked to open the bag, and whether there were any narcotics in the bag. Ricks said that there were no narcotics in the bag and he again declined to open it. The officers then advised Ricks that the dog's actions indicated that there were narcotics in the bag "and that there was probable cause to open the bag and look inside at which point he said, you have to do what you have to do." The bag was opened and searched; it contained a quantity of suspected cocaine, marijuana and distribution paraphernalia.

---

1. Deputy Wilkinson testified that he and the dog had received training in the identification and retrieval of marijuana, cocaine, crack cocaine and heroin. The dog was trained to alert the officer to the presence of CDS by a scratching motion. According to Wilkinson, the dog had never falsely indicated the presence of CDS.

## III.

Ricks does not contest the intermediate appellate court's determination, which affirmed the trial court's denial of the motion to suppress, that his arrest was supported by the requisite probable cause. Indeed, at oral argument before us, Ricks conceded that he was lawfully arrested, at least at the point when the dog scratched his bag, indicating that it contained narcotics. Nevertheless, Ricks argues that because he had a reasonable expectation of privacy in his luggage, the police had no right to search it without a search warrant, absent exigent circumstances. There were no such circumstances, he contends, because the luggage was securely in police possession and beyond his control. In these circumstances, he maintains that the Fourth Amendment requires that a search warrant be obtained, there being no danger that he could obtain a weapon or destroy incriminating evidence which would justify a warrantless search incident to the arrest. Ricks relies primarily upon *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) and *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979).

[1-3] The Fourth Amendment protects individuals from unreasonable searches and seizures. A warrantless search or seizure is *per se* unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions. *Gamble v. State*, 318 Md. 120, 123, 567 A.2d 95 (1989); *Stackhouse v. State*, 298 Md. 203, 209, 468 A.2d 333 (1983); *Howell v. State*, 271 Md. 378, 379, 318 A.2d 189 (1974). A search incident to a valid arrest is one of the limited exceptions to the warrant requirement. *Chimel v. California, supra; Colvin v. State*, 299 Md. 88, 98, 472 A.2d 953, *cert. denied*, 469 U.S. 873, 105 S.Ct. 226, 83 L.Ed.2d 155 (1984). *Chimel* emphasized "that '[t]he scope of [a] search must be' strictly tied to and justified by 'circumstances which rendered its initiation permissible.'" *Id.*, 395 U.S. at 762, 89 S.Ct. at 2039 quoting *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). The Court stated that, incident to an arrest, police may

search the person of the arrestee and any area within his immediate control to protect themselves from danger and to prevent the destruction or concealment of evidence; specifically, it said:

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'— construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."

*Id.,* 395 U.S. at 762–63, 89 S.Ct. at 2040. *See generally* C. Torcia, 1 *Wharton's Criminal Procedure,* § 171 (13th ed. 1989); W. LaFave, 2 *Search and Seizure,* § 5.5 (2d ed. 1987); J. Cook, 1 *Constitutional Rights of the Accused,* § 3.26 (1985); R. Gilbert and C. Moylan, Jr., *Maryland Criminal Law: Practice and Procedure,* § 29.3–29.4 (1983).

▉ To justify a warrantless seizure of evidence under *Chimel,* the State must demonstrate on the record that the evidence "was found either on the person of the arrestee or in a place so perilously close to him at the time of the arrest that had the discovered item been a weapon it might reasonably be employed by the person in custody to the detriment of the officer or had it been concealable or destructible evidence it would be readily susceptible to being demolished

by the arrestee." *Howell, supra,* 271 Md. at 384–85, 318 A.2d 189; *Bouldin v. State,* 276 Md. 511, 519, 350 A.2d 130 (1976); *Anderson v. State,* 78 Md.App. 471, 484, 553 A.2d 1296 (1989).

We applied these principles in *Foster v. State,* 297 Md. 191, 217–20, 464 A.2d 986, *cert. denied,* 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221 (1983). In that case the appellant was arrested in a motel room. The arresting officer patted her down and handcuffed her hands behind her back. He then searched the area immediately around her, including a partially open night stand drawer a few feet away. Money found in the drawer was seized as evidence. We held that the search of the drawer incident to the arrest was reasonable under *Chimel,* even though the arrestee was handcuffed at the time of the search. We recognized that the night stand remained in an area where the arrestee might nevertheless have gained access, particularly if she was able to break free from the handcuffs. The search of the drawer was, therefore, necessary to protect the officer from potential harm.

We again considered the scope of the search incident to an arrest in *Lee v. State,* 311 Md. 642, 537 A.2d 235 (1988). There, a police detective received a phone call from an anonymous informer. The informer described two men who had bragged that they had participated in a robbery and shooting. He also provided the location where the men and a blue gym bag containing a handgun could be found. Several officers proceeded to the location described by the caller, a basketball court. Two men there matched the description provided by the informant and both were observed with the blue bag. After continued observation, six officers ran onto the court, identified themselves as officers and forced the individuals on the court to lie face down. While the men were being patted down, one of the officers proceeded to the blue gym bag, which was hanging on the fence at a distance estimated to be from a couple of feet up to eight feet from the men. The bag felt heavy to the officer, and when opened, it contained a revolver. We held

that the search of the gym bag did not offend the Fourth Amendment because it was valid as a search incident to an arrest. Citing *New York v. Belton,* 453 U.S. 454, 461–62, 101 S.Ct. 2860, 2865, 69 L.Ed.2d 768, 776 (1981), Judge Rodowsky, writing for the Court, observed that *"Chimel's* concept of an area of control is quite flexible." *Lee, supra,* 311 Md. at 671, 537 A.2d 235. In *Lee,* the seizure of the bag was essentially contemporaneous with the arrest and the bag was within the arrestees' possible reach.

█ The validity of a search of an area in an arrestee's "immediate control," as explicated in *Chimel,* and in *Foster* and *Lee,* is controlling. The arresting officers were aware that Ricks had a prior robbery conviction and a controlled dangerous substance violation. At the time of the search of the bag, Ricks was not physically restrained. The bag remained on the sidewalk. It was possible for Ricks to grab the bag, intending either to destroy evidence or to gain access to a weapon.[2]

Ricks claims that reliance on *Chimel* and *Lee* is misplaced because those cases involved situations where the safety of officers was in question and the search was, therefore, conducted for safety reasons. But the grounds for a search incident to an arrest set forth in *Chimel* are explicitly not limited to officer safety. The Court there stated: "[I]t is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." *Id.,* 395 U.S. at 763, 89 S.Ct. at 2040. Further, the safety of arresting officers may always be in question when they are in the presence of an unrestrained arrestee. *See, e.g., United States v. Bennett,* 908 F.2d 189, 194 (7th Cir.1990) (police

---

**2.** The search in this case would not have been invalid, even if Ricks was arrested after the search of the bag. As long as the search and the arrest are essentially contemporaneous, a search may be analyzed under the principles governing searches incident to arrest. *Lee, supra,* 311 Md. at 668, 537 A.2d 235, citing *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Anderson v. State,* 78 Md.App. 471, 481–82, 553 A.2d 1296 (1989).

are not required to presume that an arrestee is wholly rational; persons under the stress of an arrest situation may attempt actions which are unlikely to succeed); *People v. Hufnagel,* 745 P.2d 242, 247 (Colo.1987) ("Arrests are necessarily tense risky events when many things are happening at once."); *Com. v. Timko,* 491 Pa. 32, 417 A.2d 620, 622 (1980) (ever present risk in an arrest situation that an arrestee may seek to use a weapon or to conceal or destroy evidence). Computation of the probability of harm to the arresting officer is not a relevant inquiry for, as we said in *Lee, supra,* 311 Md. at 670, 537 A.2d 235: "[T]he area of immediate control under *Chimel* is determined by the potential for harm and not by actual, physical control by the arrestee at the time the search is conducted."

Ricks's argument that *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) and *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) compel a reversal in this case is predicated on the proposition that the warrantless search of his luggage was unreasonable because it was unsupported by exigent circumstances.

Neither *Chadwick* nor *Sanders* mandates a result different than we have reached under the *Chimel* analysis. In *Chadwick,* railroad officials in San Diego observed two individuals loading a heavy footlocker onto a train bound for Boston. One of the men matched a profile used to spot drug traffickers. After noticing that the footlocker was leaking talcum powder, a substance used to mask the odor of marijuana or hashish, the officials reported their suspicions to federal agents. When the train arrived in Boston, federal narcotics agents observed the suspects lift the footlocker from the baggage cart and place it on the floor of the station. The agents then released a dog trained in narcotics detection; the dog signaled the presence of controlled dangerous substances in the footlocker. Thereafter, the men moved the footlocker into the trunk of their car. Before they closed the lid of the trunk, federal agents arrested the two men and Chadwick; they also seized the footlocker.

An hour and a half later, after the footlocker was separated from the arrestees and transported to the Federal Building, the agents opened it without a search warrant and seized a large quantity of marijuana.

The Court held that the warrantless search of the footlocker violated the Fourth Amendment. It said that "[W]arrantless searches of luggage cannot be justified as incident to that arrest either if the 'search is remote in time or place from the arrest,' . . . or no exigency exists." *Id.*, 433 U.S. at 15, 97 S.Ct. at 2485. Search of property is not incident to an arrest, the Court held, when law enforcement officers have reduced luggage to their exclusive control and "there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence." *Id.*[3]

The impact of *Chadwick* on the scope of a search under *Chimel* was clarified in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). There, the Court specifically rejected the application of *Chadwick* and *Sanders* to a search incident to arrest because "neither of those cases involved an arguably valid search incident to a lawful custodial arrest." *Belton, supra,* at 461–62, 101 S.Ct. at 2865. It said:

"As the Court pointed out in the *Chadwick* case: 'Here the search was conducted more than an hour after federal agents had gained exclusive control of the footlocker and long after respondents were securely in custody; the search therefore cannot be viewed as incidental to the

3. In *Sanders,* the police, acting on information received from an informant that the defendant was carrying marijuana in a green suitcase, and having later observed the green suitcase placed in the trunk of a taxi in which the defendant was riding, stopped the vehicle, searched the suitcase and found the incriminating evidence. The Supreme Court held that the search of the suitcase without a warrant was unlawful. It declined to extend the exception to the warrant requirement applicable to searches of automobiles, stating that in the circumstances the warrantless search of the luggage, to be valid, required justification under one of the other exceptions to the warrant requirement.

arrest or as justified by any other exigency.' 433 U.S., at 15 [97 S.Ct. at 2485–86]. And in the *Sanders* case, the Court explicitly stated that it did not 'consider the constitutionality of searches of luggage incident to the arrest of its possessor. *See, e.g., United States v. Robinson*, 414 U.S. 218 [94 S.Ct. 467, 38 L.Ed.2d 427] (1973). The State has not argued that respondent's suitcase was searched incident to his arrest, and it appears that the bag was not within his "immediate control" at the time of the search.' 442 U.S., at 764, n. 11 [99 S.Ct. at 2593, n. 11]." *Id.*

In *Lee v. State, supra,* 311 Md. at 669, 537 A.2d 235, the appellants contended that *Chadwick* and *Sanders* required a warrant to search the contents of a gym bag even if the police had probable cause to arrest. We rejected that argument based on the language in *Belton* that neither of those cases involved an arguably valid search incident to a lawful custodial arrest. *Lee, supra,* at 670, 537 A.2d 235, quoting *Belton, supra,* 453 U.S. at 461–62, 101 S.Ct. at 2864–65.

■ While Ricks's argument is somewhat vague, he appears to rely on one factual similarity between *Chadwick, Sanders* and the instant case: all involve a warrantless search of luggage. The Court noted in *Chadwick,* 433 U.S. at 13, 97 S.Ct. at 2484, that individuals have privacy expectations in their luggage; that luggage is not open to public view; and is intended as a repository of personal effects. But *Chadwick's* acknowledgement of a privacy interest in luggage does not invalidate a search of luggage incident to a lawful arrest when the luggage is within the perimeter described in *Chimel.* The Court's rationale for permitting a search incident to an arrest in that case was not disturbed by its holding in *Chadwick. Id.* at 14–15, 97 S.Ct. at 2485. Any container within an arrestee's immediate control at the time of arrest is subject to a contemporaneous search incident to that arrest.

Other jurisdictions are in accord with this holding. *See United States v. Tavolacci*, 895 F.2d 1423, 1428–29 (D.C. Cir.1990) (officers may search person and luggage within his reach at time of his arrest); *United States v. Andersson*, 813 F.2d 1450, 1456 (9th Cir.1987) (agents may search containers including suitcase contemporaneous with arrest); *United States v. Singer*, 687 F.2d 1135, 1147 (8th Cir.1982), *rev'd on other grounds on rehearing en banc*, 710 F.2d 431 (8th Cir.1983) (pursuant to a lawful arrest it is permissible to search what is within the control of the person apprehended, whether it is sealed or not); *United States v. Johnson*, 846 F.2d 279, 282 (5th Cir.1988) ("Law enforcement officers may, pursuant to a valid arrest, search any container on the person or within his reach."); *United States v. Litman*, 739 F.2d 137 (4th Cir.1984) (warrantless search and seizure of shoulderbag contemporaneous with arrest and frisk did not violate Fourth Amendment); *State v. Heinen*, 114 Idaho 656, 759 P.2d 947, 949 (Idaho App. 1988) (search incident to arrest exception includes bags or luggage carried at time of arrest); *Com. v. Madera*, 402 Mass. 156, 521 N.E.2d 738 (1988) (police may make a contemporaneous search of a container carried at time of the arrest); *Com. v. Stein*, 303 Pa.Super. 336, 449 A.2d 716 (1982) (search of suitcase contemporaneous with arrest is valid).

We conclude, therefore, that the warrantless search incident to Ricks's arrest was valid and that the seized evidence was properly admitted into evidence at the trial.

JUDGMENTS AFFIRMED, WITH COSTS.