# IN THE SUPREME COURT OF IOWA

No. 20–1393

Submitted December 15, 2021—Filed February 18, 2022

**STATE OF IOWA,**

Appellee,

vs.

**YALE STEVENS,**

Appellant.

Appeal from the Iowa District Court for Woodbury County, John C. Nelson, Judge.

A defendant appeals his conviction for possession of methamphetamine on the basis that officers lacked probable cause to search his person after a drug dog alerted on the vehicle in which he had been a passenger. **REVERSED AND REMANDED.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

Martha J. Lucey, State Appellate Defender, Melinda J. Nye (argued), Assistant Appellate Defender, and Sonia E. Elossais (until withdrawal), law student, for appellant.

Thomas J. Miller, Attorney General, and Sharon K. Hall (argued), Assistant Attorney General, for appellee.

**OXLEY, Justice.**

Yale Stevens was convicted of possessing methamphetamine following his arrest when his brother was pulled over for a traffic violation. Stevens contends that the district court should have suppressed evidence of the methamphetamine found in his coat pocket during the traffic stop, arguing that the officer lacked probable cause to search him after a canine indicated drugs were present in the car where he had been a backseat passenger. A drug dog's positive alert outside the driver's door of a vehicle does not alone create probable cause to search the vehicle's passengers, and the officers here lacked probable cause particularized to Stevens needed to search his person without a warrant. We reverse the denial of his motion to suppress and remand for further proceedings.

I.

On our de novo review, we find the facts are as follows. Sergeant Brian Clausen followed an Audi he observed leaving a suspected drug house on February 26, 2020, between 12:00 a.m. and 1:00 a.m. While following the vehicle, he noticed a middle brake light was out and called a uniformed police officer to perform a traffic stop. Officer Thompson received the call and pulled over the Audi. Officer Thompson also requested assistance from K-9 officer Michael Simons based on Sergeant Clausen's report that the vehicle left a suspected drug house.

There were two people in the car. Yale Stevens, the defendant, was in the rear passenger-side seat, and his brother Kyle Stevens was driving. Officer

Thompson explained the purpose for the stop and requested identification from both men. While Officer Thompson waited for his computer system to provide the status of Kyle's driver's license, Sergeant Clausen ordered Yale to exit the vehicle so the drug dog, Aura, could sniff the outside of the car. With Yale's consent, Clausen patted him down for weapons and felt only cigarettes, car keys, and what Yale identified as ChapStick. Meanwhile, Officer Thompson learned that Kyle did not have a valid license and returned to the car. He ordered Kyle out of the vehicle and ultimately arrested him.

Once Yale and Kyle were away from the car, Officer Simons walked Aura around the vehicle. Aura is a "passive" drug dog, which means she indicates the presence of a controlled substance by sitting. Officer Simons, who had been Aura's handler for over a year, explained that "there's no in between with this dog," she "either sits or doesn't sit." "[I]t's real plain" and "obvious"—her "tail stops wagging" and she "sits and stares at where the odor is coming from."

Aura jumped up on the driver's door where the window was open and sat after sniffing inside. Officer Simons then opened the driver's door to allow her in the car. Aura entered and exited the car twice. While inside the car, Aura was most interested in the passenger's side in both the front and back seat, but as Officer Simons testified, it is difficult for a passive dog to alert by sitting when inside of a vehicle. After exiting the vehicle the second time, Aura sat outside the driver's side of the empty car. Officer Simons testified he was concerned with the passenger side based on Aura's actions inside the vehicle, so he told Sergeant Clausen to "get in his pockets," meaning to search Yale.

Sergeant Clausen asked Yale if he knew why the dog would alert on the car, and Yale responded he did not. Clausen then asked if Yale had anything illegal on him, and Yale looked at him without responding. Clausen told Yale he was going to search his person. Yale put both his hands in his coat pockets, and Clausen told him to take them out. Clausen again asked Yale if he had anything illegal, and Yale mumbled something unintelligible and reached toward his right coat pocket. Clausen stopped him and reached inside Yale's pocket himself, pulling out a bag containing a crystal-like substance that later field-tested positive for 0.51g of methamphetamine. Officer Thompson subsequently found a similar user quantity of drugs in Kyle's pocket during a search incident to his arrest for driving without a license. Yale told the officers he and his brother had each purchased $30 worth of methamphetamine but refused to say more. Officer Simons later searched the car by hand and did not find any drugs.

After his arrest, Yale Stevens filed a motion to suppress the evidence recovered from his pocket, arguing that the canine's alert on the vehicle did not provide probable cause to search his person. Following an evidentiary hearing, the district court denied his motion to suppress. The court concluded the totality of the circumstances established probable cause because the car was leaving a known drug house, the canine signaled on the passenger side of the vehicle, and Stevens mumbled when questioned.

The district court proceeded to a trial on the minutes of testimony, attached reports, and the dashcam video recording from the stop. The court found Stevens guilty of possession of methamphetamine, in violation of Iowa

Code section 124.401(5) (2020). Stevens appealed his conviction, arguing the district court erred in denying his motion to suppress.[1] We retained the appeal.

## II.

We review claims challenging the denial of a motion to suppress evidence on constitutional grounds de novo. *State v. Dewitt*, 811 N.W.2d 460, 467 (Iowa 2012). When presented with such claims, we make an "independent evaluation of the totality of the circumstances as shown by the entire record." *State v. Scheffert*, 910 N.W.2d 577, 581 (Iowa 2018) (quoting *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004)). "We give deference to the district court's factual findings, but they do not bind us." *Id.*

### A.

Stevens argues that Sergeant Clausen's search of his person violated his constitutional rights under both the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution to be free from "unreasonable searches and seizures." We decide today's case under the federal constitution. Although Stevens cited both the Iowa and federal constitutions below, he did not argue for more protection or adoption of a different standard under the Iowa Constitution. *See State v. Effler*, 769 N.W.2d 880, 895 (Iowa 2009) (Appel, J., specially concurring) ("[B]ecause of our prudential concern that the issue may not be fully illuminated without a developed record and briefing,

---

[1]Stevens also appealed the sufficiency of the evidence that he knowingly possessed a controlled substance, challenging the State's reliance on field-tests to prove beyond a reasonable doubt that the substance was methamphetamine. Because we reverse the district court's denial of Stevens' motion to suppress the substance found in his coat pocket, we do not address the reliability of the field-testing.

we generally decline to consider an independent state constitutional standard based upon a mere citation to the applicable state constitutional provision."). Further, because we find there was a Fourth Amendment violation, it is unnecessary for us to separately decide this case under the Iowa Constitution.

We have said that warrantless searches of a person by a police officer are per se unreasonable, and therefore unconstitutional, unless the search falls under one of the "few carefully drawn exceptions": "consent, plain view, probable cause coupled with exigent circumstances, searches incident to arrest, and those based on the emergency aid exception." *State v. Lewis*, 675 N.W.2d 516, 522 (Iowa 2004); *see also Arizona v. Gant*, 556 U.S. 332, 338 (2009). Both parties address the warrantless search here under the automobile exception, which requires probable cause and exigent circumstances. We reject this analysis because the automobile exception does not authorize an officer to conduct a warrantless search of a person.

The automobile exception allows officers to search a vehicle without a warrant if the officers have probable cause to believe the vehicle contains contraband. *See State v. Storm*, 898 N.W.2d 140, 145–46 (Iowa 2017). The "exception rests on twin rationales: (1) the inherent mobility of the vehicle, and (2) the lower expectation of privacy in vehicles compared to homes and other structures." *Id.* at 145. Generally, a positive alert from a reliable drug dog establishes probable cause to search a vehicle, including containers capable of concealing contraband. *State v. Bergmann*, 633 N.W.2d 328, 338 (Iowa 2001) ("Several cases have concluded that a reliable drug dog alert alone is enough to

establish probable cause to search."). Stevens relies on cases holding that a dog alert on a vehicle does not provide probable cause to search a container that was not in the vehicle at the time the dog alerted, *see State v. Lelm*, 962 N.W.2d 419, 423 (N.D. 2021) (holding that probable cause established by canine's indication on a vehicle limited search for potential illegal contraband to containers within the vehicle at the time the sniff was conducted), reasoning that if probable cause is lacking to search a container not in the vehicle, it is also lacking to search a person who was outside the vehicle at the time of the drug sniff.

In *State v. Rincon*, also filed today, we held that officers properly searched a passenger's backpack that had been removed from a vehicle after the officers observed open containers of alcohol inside the vehicle. ___ N.W.2d ___, ___ (Iowa 2022). Probable cause to search the vehicle under the automobile exception for evidence of other open containers, including a search of any containers in the vehicle that could hold an open container of alcohol, had been established while the backpack was inside the vehicle, and we held that the passenger could not frustrate law enforcement's lawful search by removing the backpack from the vehicle. *Id.* at ___ (distinguishing *State v. Lelm* on the basis that the passenger's backpack in that case was not in the vehicle when the drug dog alerted, so the probable cause from the dog alert did not extend to the backpack). Arguably, an extension of our *Rincon* holding supports Stevens's position. But *Rincon* involved search of a backpack, not search of a person. This distinction is important in search and seizure jurisprudence, *cf.* 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.1(b) (6th ed. 2020) ("This distinction

[between probable cause to search a place and probable cause to arrest an individual] is a critical one, and . . . there may be probable cause to search without probable cause to arrest, and vice-versa."), and we must consider that distinction in determining whether the officers satisfied constitutional standards when they searched Stevens's person.

"It has long been the law that probable cause to search a *car* does not justify the search of a *passenger*." *State v. Horton,* 625 N.W.2d 362, 365 (Iowa 2001) (en banc) (citing *United States v. Di Re,* 332 U.S. 581, 584–87 (1948)) (emphasis in original). In *Wyoming v. Houghton,* in holding that probable cause to search a vehicle for contraband extended to searching a passenger's bag that might contain the contraband, Justice Scalia distinguished between the diminished privacy associated with a passenger's belongings found in a vehicle and "the unique, significantly heightened protection afforded against searches of one's person." 526 U.S. 295, 303 (1999) (distinguishing *Di Re,* 332 U.S. 581, and *Ybarra v. Illinois,* 444 U.S. 85 (1979)); *see also id.* at 307–08 (Breyer, J., concurring) (writing separately to highlight that the bright-line rule for the automobile exception applied by the majority extended only to the search of the automobile and its containers, not to the search of a person found in the vehicle). Other courts have made the same distinction. *See, e.g., State v. Gibson,* 108 P.3d 424, 429 (Idaho Ct. App. 2005) ("[P]ersonal searches of vehicle occupants are not authorized under the automobile exception as a result of the occupant's mere presence within a vehicle, which there is probable cause to search."); *State v. Harris,* 280 S.W.3d 832, 843 (Tenn. Crim. App. 2008) ("We know of no broad

application of the vehicle search exception to the warrant requirement, however, that underwrites the search of a *person* who occupied the vehicle prior to the dog sniff."). As one court has explained:

> Probable cause to believe that a person is carrying evidence does not justify a warrantless search of the person any more than probable cause to believe a home contains evidence justifies a warrantless search of a home. Only places or things enjoying a lesser expectation of privacy, such as automobiles, are vulnerable to probable-cause-based warrantless searches for the purpose of discovering and seizing evidence of crime.

*Wallace v. State*, 791 A.2d 968, 974 (Md. Ct. Spec. App. 2002) (quoting *State v. Funkhouser*, 782 A.2d 387, 404 (Md. Ct. Spec. App. 2001)), *aff'd* 812 A.2d 291 (Md. 2002).

Aura's alert on the driver's side of the vehicle may have given the officers probable cause to search the vehicle given its inherent mobility and its occupants' diminished expectation of privacy in its contents. But the justification for searching the vehicle did not allow Sergeant Clausen to also search Stevens's person under the automobile exception.

Although probable cause that a vehicle contains contraband does not justify a warrantless search of a person under the automobile exception, probable cause that a person is committing a crime does allow an officer to arrest the person. *See Horton*, 625 N.W.2d at 364 ("Probable cause [to arrest] exists when the facts and circumstances within the arresting officer's knowledge would warrant a person of reasonable caution to believe that an offense is being committed." (quoting *State v. Ceron*, 573 N.W.2d 587, 592 (Iowa 1997))). And then the officer can conduct a warrantless search incident to a lawful arrest. *Id.*

at 364–65. Under a search incident to arrest, an officer can (1) disarm the suspect to take him into custody, and (2) preserve evidence. *United States v. Robinson*, 414 U.S. 218, 234 (1973). Even though a search incident to arrest typically occurs after an arrest, "the timing of the formal arrest is not fatal to the search." *Horton*, 625 N.W.2d at 364; *see also Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980) ("Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa."). The search can precede a "formal arrest if it is substantially contemporaneous with it, *provided probable cause for the arrest existed at the time of the search.*" *State v. Peterson*, 515 N.W.2d 23, 25 (Iowa 1994) (emphasis added).

While the search of a vehicle or a container under the automobile exception and the search of a person incident to a warrantless arrest both ultimately turn on a finding of probable cause, the focus of the probable cause determination differs. *See Gibson*, 108 P.3d at 430 ("The standard of probable cause involves the same quantum of evidence regardless of whether an arrest or a search is involved," but "the facts needed to justify a search are different from those needed to justify a seizure."). Probable cause to search under the automobile exception "exists where in view of the 'totality of the circumstances,' 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Butler v. United States*, 102 A.3d 736, 740–41 (D.C. 2014) (quoting *United States v. Gilliam*, 167 F.3d 628, 633 (D.C. Cir. 1999)). "Contrastingly, the inquiry for probable cause to *arrest* is whether the facts and

circumstances within a law enforcement officer's knowledge are sufficient to warrant a prudent [police officer] in believing that [the suspects] had committed or [were] committing an offense." *Id.* at 741 (alterations and emphasis in original). So the parties' arguments about probable cause have relevance to the analysis, but examining probable cause under the proper framework—probable cause to support a warrantless arrest—keeps the focus on the person to be arrested, not the place to be searched. Thus, we must determine whether Sergeant Clausen had probable cause to arrest Stevens immediately before he searched Stevens's person by reaching into his pocket.

B.

The standard for finding probable cause is not subject to a precise definition because whether it exists depends on the specific facts of each case. *See Maryland v. Pringle*, 540 U.S. 366, 371 (2003) ("The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances."); *Illinois v. Gates*, 462 U.S. 213, 232 (1983) ("[P]robable cause is a fluid concept— turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules."); *State v. Freeman*, 297 N.W.2d 363, 365 (Iowa 1980) (focusing on the "probabilities based on practical considerations, not on legal technicalities" in reviewing for probable cause). However defined, " '[t]he substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' " *Brinegar v. United States*, 338 U.S. 160, 175 (1949) (quoting *McCarthy v. De Armit*, 1 Pennyp. 297, 1881 WL

13865, at *6 (Pa. 1881)). The probable cause requirement "seek[s] to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime," while also allowing "fair leeway" to officers in protecting the community. *Id.* at 176. A higher requirement could "unduly hamper law enforcement," but a lesser one would "leave law-abiding citizens at the mercy of the officers' whim or caprice." *Id.*

In assessing probable cause to make a warrantless arrest, the grounds for the reasonable "belief of guilt must be particularized with respect to the person to be searched or seized." *Pringle,* 540 U.S. at 371; *see also Ybarra,* 444 U.S. at 91 ("[A] search or seizure of a person must be supported by probable cause particularized with respect to that person."). Due to this particularization requirement, probable cause to search a car does not justify the search of a passenger without something more to create a reasonable belief of wrongdoing specific to the passenger. *Pringle,* 540 U.S. at 373. In *Maryland v. Pringle,* the United States Supreme Court upheld a finding of probable cause to search a vehicle's three passengers after the police found five glassine bags of cocaine hidden behind the backseat armrest and $763 of rolled-up cash in the glovebox. *Id.* at 368. The amount of cash and quantity of drugs indicated drug dealing, making it more likely that the occupants were part of a common enterprise, which provided probable cause to arrest them all when none claimed ownership. *Id.* at 372–73. On the other hand, where officers caught an informant with counterfeit gas ration coupons in the backseat of a vehicle, they had probable cause to arrest the person sitting in the driver's seat based on the informant's

statement he purchased the counterfeit coupons from the driver but lacked probable cause to arrest the front seat passenger where the officers had no information implicating him in the benign transaction. *Di Re*, 332 U.S. at 587, 592–93 ("We are not convinced that a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled.").

We likewise require probable cause specific to the individual to support the warrantless arrest of a passenger of an automobile. *Horton*, 625 N.W.2d at 365. In *State v. Horton*, the defendant was a passenger in a vehicle that an officer stopped due to a license plate violation. *Id.* at 363. After seeing marijuana butts in the vehicle's ashtray, an officer searched the passenger and discovered marijuana in her pocket. *Id.* Focusing on whether the officer had probable cause to make an arrest prior to discovering marijuana in the passenger's pocket, we concluded that "[t]he officers in Horton's case could have reasonably believed the marijuana had been smoked by Horton, her companion, both, or perhaps neither." *Id.* at 367. Proximity to marijuana butts would not have been sufficient to *convict* the defendant, but it was enough to convince a reasonable person that a crime had been committed —thereby creating probable cause to search the people who may have committed it. *Id.*; *see also State v. Merrill*, 538 N.W.2d 300, 302 (Iowa 1995) (per curiam) (holding officer had probable cause to search passenger's hand where officer smelled burnt marijuana as passenger stepped out of car and passenger made furtive attempts to hide something in his hand). Although *Pringle, Di Re,* and *Horton* are not dog-sniff cases, they inform our

analysis because they confirm that officers must have particularized suspicion sufficient to arrest a passenger before searching them.

C.

The State nonetheless urges us to conclude that Aura's alert on any part of the vehicle provided the probable cause needed to search any passengers, including Stevens. We have not before addressed this specific issue. But courts in other jurisdictions have, with some resulting disagreement. The majority view appears to be that probable cause to search a vehicle based on a drug dog's alert does not extend to searching the passenger without "something more sufficiently particularized" to the individual. *See Whitehead v. Commonwealth*, 683 S.E.2d 299, 305 (Va. 2009) ("After the positive alert by the trained narcotics detection dog, Officer Quigley unquestionably had probable cause to search the vehicle. However, without something more, the positive alert did not provide probable cause sufficiently particularized as to Whitehead [the passenger] to allow the search of his person." (citation omitted)); *see also United States v. Williams*, 650 F. Supp. 2d 633, 673 (W.D. Ky. 2009) ("[W]hile [the automobile exception] may justify a search of the car's interior and the personal possessions of its occupants found therein, it will not alone justify the warrantless search of the vehicle's occupants themselves." (citing *Houghton*, 526 U.S. at 303 & n.1)); *Cady v. State*, 817 So. 2d 948, 949 (Fla. Dist. Ct. App. 2002) (finding that dog's alert to the passenger seat after the defendant had exited the vehicle did not give the police probable cause to believe the defendant had drugs on his person); *Gibson*, 108 P.3d at 432 ("The dog's detection of the odor of drugs did not automatically

justify probable cause to arrest Gibson unless there were additional factors to connect that odor with him."); *People v. Fondia*, 740 N.E.2d 839, 841 (Ill. App. Ct. 2000) (agreeing in a pre-*Pringle* case with the defendant's argument "that a police canine alert of a car's exterior indicating the presence of a controlled substance within the car does not, without more, provide the police with probable cause to search the persons of the car's occupants"); *State v. Anderson*, 136 P.3d 406, 415 (Kan. 2006) ("Although this court has held that a drug dog's alert is sufficient to constitute probable cause to search a vehicle, we do not agree with the [*United States v.*] *Anchondo* [,156 F.3d 1043, 1045 (10th Cir. 1998),] panel's decision that such an alert followed by an unsuccessful search of the vehicle gives law enforcement license to search or arrest the vehicle's driver." (citation omitted)); *State v. Smith*, 729 S.E.2d 120, 126 (N.C. Ct. App. 2012) ("The fact that defendant was formerly a passenger in a motor vehicle as to which a drug dog alerted, and a subsequent search of the vehicle found no contraband, is not sufficient, without probable cause more particularized to defendant, to conduct a warrantless search of defendant's person."); *State v. Kelly*, No. 2000–P–0113, 2001 WL 1561543, at *3 (Ohio Ct. App. Dec. 7, 2001) (holding canine alert on vehicle supported search of interior of car but not search of any of its occupants where dog did not indicate on any of the occupants). These cases recognize that a drug dog's positive indication that drugs may be present in a car by itself is insufficient to support probable cause to arrest a passenger of the car without a reasonable belief of wrongdoing particularized to the passenger.

The State points us to three cases where courts have stated that a dog alert on a car provides probable cause to search an occupant of the car. *See United States v. Klinginsmith,* 25 F.3d 1507, 1510 (10th Cir. 1994); *State v. Griffin,* 949 So. 2d 309, 314 (Fla. Dist. Ct. App. 2007); *State v. Ofori,* 906 A.2d 1089, 1099 (Md. Ct. Spec. App. 2006). Having considered the cases, we disagree with their reasoning and decline to follow them.

In *United States v. Klinginsmith,* a dog alerted on the trunk of a vehicle after the driver and passenger consented to a search of the vehicle. 25 F.3d at 1509. The driver produced a key for the trunk, where officers discovered eighty kilograms of marijuana. *Id.* at 1509, 1511. The United States Court of Appeals for the Tenth Circuit concluded that "when the dog 'alerted,' there was probable cause to arrest Magee [the driver] and Klinginsmith [the passenger] and to search the vehicle without a warrant under the automobile exception even had there been no prior consent." *Id.* at 1510. The court did not elaborate on how the dog alert provided probable cause to arrest both occupants, only citing *United States v. Stone,* 866 F.2d 359, 364 (10th Cir. 1989), to support its conclusion that it did. *See id.* But *Stone* merely held that officers did not conduct an impermissible search of the defendant's vehicle when a drug dog jumped into the hatchback and alerted on a duffle bag. 866 F.2d at 364. *Stone* addressed the admissibility of the drugs seized from the duffle bag, not whether the dog alert created probable cause to arrest or search the vehicle's passengers. *Id.* at 362–64. The Tenth Circuit's conclusory holding expressly relies on the automobile exception, which, as discussed above, does not provide probable cause to search an

occupant of the vehicle without a warrant. To the extent the Tenth Circuit believes it does, we simply disagree.

Nor are we persuaded by the reasoning of the two state cases. *State v. Ofori,* which read *Pringle* as "absolutely dispositive," concluded that "[b]ecause of the close association between contraband in a vehicle and the driver of (or other passenger in) the vehicle, either finding the drugs in the vehicle, as in *Pringle*, or probable cause to believe that they are in the vehicle, as in this case, necessarily implicates the driver and passengers." 906 A.2d at 1099–1100. We do not read *Pringle* to broadly conclude that there is a close association between every passenger of a vehicle and any amount of drugs found in the vehicle. The *Ofori* court supported its "close association" conclusion with cases involving dog alerts on luggage to extrapolate to dog alerts on vehicles, *see id.* at 230–32 (discussing *Florida v. Royer*, 460 U.S. 491 (1983); *Ricks v. State*, 586 A.2d 740 (Md. 1991); *United States v. Williams*, 726 F.2d 661, 663 (10th Cir. 1984); *United States v. Waltzer*, 682 F.2d 370 (2d Cir. 1982)), an extrapolation we reject given the much closer nexus between the owner of luggage and the contents of that luggage. *See, e.g., Ricks*, 586 A.2d at 742 (recognizing the defendant "conceded that he was lawfully arrested, at least at the point when the dog scratched his bag, indicating that it contained narcotics" and addressing separate argument as to whether officers needed a search warrant to open the luggage). *Ofori* ignores the Supreme Court's express requirement that any "belief of guilt must be particularized with respect to the person to be searched or seized." *Pringle*, 540 U.S. at 371.

We are likewise unconvinced by the Florida District Court of Appeals opinion in *State v. Griffin*, 949 So. 2d 309, which does not even represent the law in Florida. The majority explained that had it been writing on a clean slate it would have concluded that "[w]hen the dog alerted, there was probable cause that contraband was in the car; once the car was cleared, by the process of elimination, probable cause then existed to search Appellee [the lone occupant]." *Id.* at 314. But that was not its holding. Rather, it *affirmed* the district court's suppression of the evidence based on controlling Florida precedent, which consistently held that a dog alert on a vehicle only supports searching the vehicle, not the passengers, even a lone driver. *Id.* at 310 (affirming as bound by *Williams v. State*, 911 So. 2d 861, 861 (Fla. Dist. Ct. App. 2005) (per curiam)). The *Griffin* majority sought certification of the case to the Florida Supreme Court, reasoning that *Pringle* supported overruling the *Williams* line of cases, citing *Ofori* and *Klinginsmith* in support. *Id.* at 311–14.

Judge Padovano, concurring in the majority's judgment affirming suppression of the evidence, explained:

> The fallacy in the majority opinion is that it conflates the justification for searching a place with the justification for searching a person. It has never been the law that a police officer may search a person merely because that person is located in a place the officer is otherwise authorized to search.

*Id.* at 316 (Padovano, J., concurring in the result only) (discussing *Ybarra*, 444 U.S. at 91). He also distinguished *Pringle*, involving actual drugs found in a vehicle, from a case involving only a dog alert on a vehicle, explaining:

> [W]e cannot afford to confuse the justification for searching a vehicle with the justification for searching a person in the vehicle. If police

officers have a lawful basis to search a vehicle for drugs and actually find drugs in the vehicle, then they have the right to search the occupants. But to hold that police officers have a right to search the occupants of a vehicle merely because there is a possibility that drugs are located in the vehicle would push the limit of law enforcement authority well beyond that recognized in *Pringle.*

*Id.* at 318. The Florida Supreme Court denied review, apparently agreeing, as do we, with Judge Provado's more compelling view. *See State v. Griffin*, 958 So. 2d 920 (Fla. 2007) (unpublished table decision).

The State's position essentially extends the automobile exception to searches of persons, a concept we reject for the reasons already discussed. We join the majority view and hold that a drug alert on some part of a vehicle does not, in and of itself, provide probable cause to arrest a passenger of a vehicle. There must be "something more" to provide a reasonable belief of guilt particularized to a person before he is arrested or searched. *See Whitehead*, 683 S.E.2d at 305.

D.

The district court did not rely only on the dog alert, and we now consider the totality of the circumstances to determine whether the officers had probable cause specific to Stevens to support an arrest when Sergeant Clausen reached into his pocket. *See Pringle*, 540 U.S. at 371; *Scheffert*, 910 N.W.2d at 581. The State relied on three facts to support probable cause: Officer Thompson observed the car leaving a suspected drug house, Aura's alert on the vehicle, and Stevens's mumbling when asked if he possessed anything illegal.

The district court found this to be a close case, concluding the "K9 signaling on the passenger side and passenger rear of the vehicle" was the most

significant fact. But the district court made a factual error in finding that "Aura not only signaled on the passenger side of the car when she was outside of the Quattro, but once she was allowed into the car she signaled on the rear seat of the vehicle on the passenger rear side seat." Contrary to the court's findings, Aura did not signal at all on the outside passenger side of the car. Officer Simons testified only that the dog alerted at the driver's door. From our review, the dashcam video does not show Aura alerting on the outside passenger side of the car. She jumped up on that side of the car, but she never even attempted to sit, i.e., alert, on the passenger side. At oral argument, the State agreed the district court was simply wrong in finding Aura alerted on the outside passenger side of the car.

With respect to the district court's finding that Aura "signaled on the passenger rear side seat" inside the car, Officer Simons's testimony made clear that the dog was *interested* in the passenger's side when inside the vehicle, but she did not actually signal there—it would have been hard for her to sit inside the car. Although Officer Simons testified he was concerned about the passenger side because of her interest there, a drug dog's interest alone is not enough to support probable cause that drugs are present. *See United States v. Guzman*, 75 F.3d 1090, 1096 (6th Cir. 1996) ("[W]e acknowledge that the dog's 'interest' in the bag alone would not constitute probable cause."); *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993) (holding that a warrant application that said a drug dog merely showed "interest" in a package would not support probable cause). This is especially true given Officer Simons's testimony that

Aura was an all-in type of dog—she either alerted or she didn't. On our review of the evidence, Aura indicated only at the driver's door of the car.

So the facts we must consider include that Officer Thompson observed the vehicle leave what he described as a known or suspected drug house, Aura was interested in the inside passenger side of the car but only alerted at the driver's door of an empty vehicle, and Stevens mumbled when Sergeant Clausen asked him if he had anything illegal after Aura alerted at the driver's door. In considering the totality of circumstances, we also find relevant that Sargent Clausen patted down Stevens for weapons when he first removed him from the car and did not discover any contraband. *See People v. Lee*, 828 N.E.2d 237, 246 (Ill. 2005) (holding officers lacked probable cause to arrest defendant for drug loitering where officers merely observed defendant standing on known drug corner and "the *Terry* protective pat-down search did not reveal any weapons or drugs").

The district court noted that the "known drug house" fact taken alone was "not compelling or persuasive at all" considering the lack of evidence as to how or why it had become a "known" drug house. We agree with the district court that absent some evidence explaining why Sergeant Clausen believed the house to be a drug house, his unadorned statement adds little, if anything, to the probable cause analysis. In *State v. Hillery*, the officer knew the defendant had prior drug convictions and saw him engage in a "three-minute encounter with a suspected drug dealer at a house connected to a recent drug overdose." 956 N.W.2d 492, 501 (Iowa 2021). These details supported the officer's claim that the

house was a known drug house. But no such evidence was presented in this case to support the officer's conclusory assertion. We agree with the district court that Sergeant Clausen's observation about the vehicle's location does not support probable cause to believe Stevens was engaged in illegal activity.

With respect to Stevens's behavior before the search, the district court's description is incomplete. In its order denying the motion to suppress, the court described the suspicious events creating probable cause as:

> He mumbled something inarticulable, and then reached for his pockets. The content of what was "mumbled" by the Defendant cannot be damning because it is unknown, but a reasonable person could be validly suspicious that the lack of a clear denial signified guilt.

This description leaves out important parts of the questioning. According to Clausen's testimony:

> I first asked Mr. Stevens why the dog would indicate for an illegal substance on the vehicle, and he stated he did not know why. I asked him if he had anything illegal on him, and he just kind of looked at me. I advised him at that point that I was going to search his person. That's when he started to mumble about having something in his pocket, but he never did tell me what it was and reached towards his coat pocket.

The district court's ruling omitted that Stevens did in fact deny knowing why a dog would indicate that an illegal substance was in the vehicle. In any event, the district court improperly considered Stevens's silence as an indication of guilt. The lack of a "clear denial" does not support probable cause of illegal activity. *See Di Re*, 332 U.S. at 594–95 ("An inference of probable cause from a failure to engage in discussion of the merits of the charge with arresting officers is unwarranted. Probable cause cannot be found from submissiveness, and the

presumption of innocence is not lost or impaired by neglect to argue with a policeman.").

Considering the totality of the circumstances, the most that can be said is that a drug dog showed interest in the passenger side but only alerted at the driver's door of the vehicle in which Stevens had been sitting on the passenger side and Stevens denied knowing why the dog would alert on the vehicle, mumbling something unintelligible when asked if he had anything illegal on his person. No facts link the dog's alert to Stevens, and the remaining facts do not provide probable cause that he was engaged in illegal activity to support arresting him. *See Gibson*, 108 P.3d at 432 ("Unlike [other cases] where the police possessed additional information such as the defendant's evasive conduct, presence in a high crime area or suspected involvement in drug trafficking, here there is no evidence that the officers possessed additional facts that connected Gibson to illicit drugs."); *cf. United States v. Haggard*, 368 F.3d 1020, 1024 (8th Cir. 2004) (holding that an officer had probable cause to arrest when the officer knew about the passenger's suspected drug trafficking, a drug dog alerted on the car, the passenger admitted that he recently smoked marijuana, and the officer discovered cocaine residue in a location accessible to the defendant); *Jacobs*, 986 F.2d at 1235 (holding that information about a suspicious package being shipped, coupled with the fact that a drug dog showed interest but did not alert on the package, "might have provided reasonable suspicion that it contained contraband" but failed to provide the probable cause "needed to overcome the defendant's Fourth Amendment right to privacy in its contents").

This case is analogous to *Di Re*, where "[t]he decisive evidence [the methamphetamine in Stevens's pocket] was that obtained by search of his person, *after* he was arrested without a warrant of any kind." 332 U.S. at 582 (emphasis added). That evidence came too late. The officers lacked probable cause to arrest Stevens before they searched his person, and the district court erred in denying his motion to suppress the evidence found from the unconstitutional search.

III.

We reverse the district court's denial of Stevens's motion to suppress, vacate his conviction, and remand the case for additional proceedings.

**REVERSED AND REMANDED.**